Gilcrest & Company et al., Appellees, v. City of Des Moines, Appellant, and Barber Asphalt Paving Company, Intervener, Appellant.

**Municipal corporations:** PUBLIC IMPROVEMENT: RESOLUTION OF NECESSITY: PUBLICATION: WAIVER. The publication of a resolution of necessity for a street improvement is jurisdictional; and failure to publish the same in conformity with the statute renders an assessment therefor invalid, unless property owners affected thereby have waived their right to rely on the objection.

**Same:** WAIVER OF OBJECTIONS: ESTOPPEL. Where the petitioners for a street improvement knew that the work was in progress and made no objection thereto, except as to the quality of the work, and in no manner questioned the validity of the procedure under

which it was being done, they were estopped from objecting to the jurisdiction of the city to make the improvement after the work was completed.

**Same:** BOARD OF PUBLIC WORKS: ACCEPTANCE OF IMPROVEMENT. The acceptance of a public improvement upon its completion by a board of public works, and the aproval of a schedule of assessments, could only be done by the .board when in session and acting as a board; an approval by the members individually was not authorized by the statue. And where the board consisted of two members, one of whom acting alone approved a tentative schedule of assessment prepared by the engineer, and the other refused to assent thereto, the approval of the schedule by the engineer did not constitute a legal acceptance of the work, even though he had power to cast a deciding vote in case of disagreement of the members of the board.

**Same:** ASSESSMENTS: OBJECTIONS: RIGHT OF PROPERTY OWNERS TO BE HEARD. The owner of property to be assessed for a public improvement is entitled to make the objection before the city council, that the work has been performed in such defective manner that the property ought not to be subjected to the burden of paying for it. And even though the board of public works may have accepted the improvement and made a schedule of assessments, the question of assessment was still open for review by the council upon objection to the validity or correctness of the same, and a denial of the right of property owners to be heard on that question rendered the assessment invalid.

**Same:** INVALID ASSESSMENT: LIABILITY OF CITY. Where the owners of property are not liable for an assessment for a street improvement, because of some defect in the proceedings which is chargeable to the city, a contractor who has completed the improvement may recover the cost thereof from the city.

**Same:** ESTOPPEL: PLEADINGS. In proceedings before ·a city council and on appeal to enforce assessments for a public improvement, formal pleadings are not contemplated; and the city may show that property owners who petitioned for the improvement had so far acquiesced in its construction as to estop themselves from objection to the invalidity of the proceedings, without pleading a waiver or an estoppel.

*Appeal from Polk District Court.*—HON. W. H. Mc-HENRY, Judge.

FRIDAY, OCTOBER 25, 1912.

THIS action and twenty others consolidated therewith are in the nature of appeals from special assessments levied by the city council of Des Moines for the expense of certain street paving. The particular nature of the controversy and the material facts are fully stated in the opinion.—*Modified*, and *affirmed*.

*R. O. Brennan,* for City of Des Moines.

*Read & Read,* for Barber Asphalt Paving Co.

*Hager & Powell, Henry & Henry, Craig T. Wright,* and *Thomas F. Stevenson,* for appellees.

WEAVER, J.—A resolution looking to the pavement of the streets in question having been presented to the city council, a date was fixed for hearing objections to the proposed improvement. The proposition describes the pavement to be laid as "asphalt having one and one-half inch wearing surface and an inch binder course on six inches of cement concrete foundation," according to specifications to be furnished by the city engineer. Four property owners appeared and objected to the passage of the resolution; but it was adopted, and the order for the paving was entered of record as being "without the petition of the owners of a majority of the linear front feet of property abutting thereon." The prepared plans and specifications were approved by the board of public works and notice to bidders published describing the improvement substantially as in the original resolution. The Barber Asphalt Paving Company was declared the successful bidder, and contract with that company was duly drawn and executed providing that the work be done in thorough, substantial, and workmanlike manner and in strict compliance with the plans and specifications. The work being completed, the city engineer prepared a schedule of assessments and pre-

sented it to the board of public works. Of the two
members of that board one, without consultation with the
other, indorsed the schedule with his approval; but the
other member refused his approval and so indorsed the
paper. Thus the matter stood, when on March 31, 1908,
by a change in the statute and in the form of the city
government, the board of public works was abolished and
its authority and powers were conferred upon the city coun-
cil. Thereafter the council caused notice to be given to
the owners of the property assessed of time and place where
their objections, if any, to such assessments would be heard.
Gilcrest & Co. and twenty-six other property owners ap-
peared and filed objections. After hearing the complaints,
the council acting under the advice of the city attorney,
passed a resolution declaring that it had "no power to re-
view or set aside the action of the former city officers, and
therefore had no power to pass upon the objections as far
as they relate to the character and quality of the improve-
ment, and as to such matters the council is bound by the
action of the former city officals, and therefore declines
to consider or determine the objections in respect thereto."
Following this resolution, the council proceeded to approve
the schedule of assessments and levy the same as reported
by the engineer. From this action the objectors appealed
to the district court, where the several cases were con-
solidated. In that court the paving company intervened,
alleging compliance with its contract, and praying that the
assessments be enforced or, if held void, that it have judg-
ment against the city for the amount of its claim. Issue
was taken upon the petition of intervention, and, as a fur-
ther ground for avoiding the assessments, plaintiffs alleged
a failure to give proper notice of hearing upon the original
resolution of necessity. The district court entered a decree
setting aside the assessment and dismissing the petition of
intervention, and the city and the paving company have
appealed.

I.   As the provision of the statute for a hearing upon the resolution of necessity lies at the threshold of the proceeding and is jurisdictional in its nature, we give the objection thereto first consideration.   The statute, Code, section 810, provides that such notice shall be by four publications in a local newspaper, and the point made by the objecting property owners is that there were not more than three such publications.   On this contention there is a conflict of evidence, but it would seem from the record that the preponderance is with the objectors.   In the absence of anything tending to show an estoppel or waiver, such a failure is quite manifestly jurisdictional and fatal to the validity of a tax or assessment based thereon.   But such result does not universally follow, for the property owners affected by such proceeding may and often do estop themselves from relying upon the jurisdictional question. *Land Co. v. Des Moines,* 144 Iowa, 625; *Oliver v. Monona County,* 117 Iowa, 45; Hamilton's Special Assessments, sections 725, 727; *Ross v. Supervisors,* 128 Iowa, 427; *Arnold v. Fort Dodge,* 111 Iowa, 152.

*1. MUNICIPAL CORPORATIONS: public improvement: resolution of necessity: publication: waiver.*

The individual objectors to the assessments had petitioned the council for the paving of these streets, and thus set the proceeding in motion.   They had been interested observers of the work as it proceeded, and, while numerous objections and protests were being entered by them during its progress, those objections, as far as appears from the record, were confined to the character and quality of the work, and not to the validity of the procedure or the authority of the city to order the paving.   So far as they are concerned, the notice of hearing upon the resolution had effected its purpose, and justice requires that they be estopped, when the work is done and their streets improved, to set up a claim that the improvement was wholly unauthorized.   We hold therefore that the jurisdictional objection will not avail

*2. SAME: waiver of objections: estoppel.*

those who in effect became parties by uniting in the original proceeding, or later came voluntarily into it pending the execution of the work and sought to compel the due performance of the contract according to its terms. The question is one upon which there is fair room for argument, and many cases can be cited giving more or less support to either contention; but we are satisfied that the rule to which we adhere is a just one contravening no sound legal principle, while the other would very often enable property owners to obtain the benefit of extensive and valuable street improvements and escape contribution to the expense thus incurred.

II. Under the statute in force when this improvement was begun, the city of Des Moines had by ordinance provided itself with a board of public works as provided by

3. SAME: board of public works: acceptance of improvement.

Code of 1897, section 863 et seq. When an improvement of this nature was ordered by the council, it became the duty of the board to let the contract for its construction. Code, section 812. It was further authorized to superintend all works of public improvement and accept work done or improvements made when completed according to contract and perform such other service as might be required by ordinance of the council. But where a preliminary notice was required, all proceedings preliminary to and including the passage of the resolution or ordinance were to be taken by the council and the certificate of the engineer that work had been done or material furnished were to be made to the board of public works and orders for payment drawn and signed by it. Code, section 870. All orders and bills subject to its approval were to be indorsed by the members of the board or their reason for failing to do so stated in writing and approved by the council before payment made. Code, section 871. Upon the abolition of the board its powers and duties were conferred upon the city council. Turning now to the record in this case to find just what

part of the duty of the board of public works with reference to the improvement in controversy had been performed when it ceased to exist, we think it must be said that the board's authority to accept the work of the contractor was never exercised. While Code, section 871, is perhaps open to the implication that the approval of a claim or bill by the individual or independent act of the several members in indorsing it was sufficient authority for its payment, yet such is not the case with respect to the acceptance of the work. The statute does not charge the individual members of the board with this duty. It is the board which accepts the work. A board consisting of two or more members can discharge any duty imposed upon it as such only by action as a body, and this implies meeting, consultation, deliberation, and agreement of all or a majority of the members. So far as we can ascertain, the matter was never the subject of consideration by the board, and certainly the board never voted or agreed that the work was done according to contract. The act of one member in affixing his approval to the tentative schedule of assessments prepared by the engineer and the refusal of the other member to give his is certainly very far from being such an acceptance as would bind either the city or the property owners. Nor can it be said that the approval of such schedule by the engineer acts as a "casting vote" under chapter 26, Laws of the 32d General Assembly, for a tie or disagreement calling for such casting vote can only exist where there has been a meeting of the board and the inability of the members to agree has been developed by a vote or other sufficient declaration.

But even if we could say that the board did "accept" the work and approve the schedule, we are 4. SAME: assessments: objections: right of property owners to be heard. not prepared to hold that such acceptance would bar the property owners from insisting before the council that the proceedings had been irregular, or that the contract had not been per-

formed in substantial compliance with its terms.   It is the clear intent of the statute (indeed, its validity would be open to serious doubt were it otherwise) to give the property owner opportunity somewhere along the line to deny or contest the due performance of work the cost of which is to be imposed upon him.   There was never at any time any provision for such a hearing before the board of public works.   The duty of the board was fully performed when it approved the work and made its schedule of proposed assessments and filed the same with the city council.   It was then the duty of the latter body to give notice and opportunity for objections by persons conceiving themselves aggrieved.   Code, section 823.

True, the nature of the complaints to be thus considered is stated in somewhat vague and general terms as being "all objections thereto, or to the prior proceedings, on account of errors, irregularities or inequalities;" but we think it must be held to include the right to object that the work contracted for has never been performed, or that it has been performed in such defective manner that the property ought not to be subjected to the burden of paying for it.   Now in this case the parties had no hearing before the board of public works upon their contention that the work was not done according to contract and the improvement was therefore practically worthless.   Indeed, the law provided for no such hearing before that body.   Notwithstanding this conceded fact, the council, after notifying the property owners to present their complaints for hearing and adjustment, wholly refused to entertain their objections on the theory that in order to do so it would have to set aside the action of former city officers and that such was beyond its authority.   In this we think the council clearly erred.   In the first place, as we have already suggested, there is no sufficient showing that the board of public works ever did act in the matter, and in the next place even the acceptance of the work by the board would still

leave the question open to review by the council upon the property owners' objections to the validity or correctness of the assessments. The denial of such hearing operated to deprive the objectors of a substantial right, and the assessment following such action can not be upheld. The decree below must therefore to this extent be affirmed. In our judgment, however, the error to which we have adverted ought not to deprive the city or the contractor of the right to contest the objections filed by the property owners, but full justice will be done by permitting the city to resume the proceedings at the point where the error was committed and pursue them to completion in the regular course provided by the statute, and the decree will therefore be so far modified as to provide that the setting aside of the assessments shall be without prejudice to the right of the council to give new notice of a day on which the objections of the property owners will be considered and passed upon; the proceedings thenceforward to be conducted as if the erroneous ruling and assessments had never been made.

III.    The owners of one or two of the lots did not petition for the improvement, and no conduct on their part is shown on which a waiver or estoppel can be predicated. As to these lots the assessments are entirely void and not merely erroneous. This defect is chargeable to the city or its officers and not to the contractor, and, in the event that upon further hearing it is found that the contract has been substantially performed, then, so far as the cost of the improvement would otherwise have been chargeable upon these lots, the contractor will be entitled to judgment against the city.

5. SAME: invalid assessment: liability of city.

IV.    Appellees allege that the claim of waiver or estoppel argued by the appellants is unavailing because there is no pleading raising such an issue. We think otherwise. This controversy was initiated before the city council and comes here by successive appeals.. Proceedings of this nature are nec-

6. SAME: estoppel: pleadings:

essarily lacking in much of the formality observed in the framing of issues in the courts of record. They do not contemplate formal pleadings. The issues are ascertained by reference to the record of the council's actions and to the written objections filed by the property owners. No answer is called for, no demurrer would be allowed, and we see no reasons why every fact tending to show that the objections ought not to be sustained is not admissible in evidence even though not formally pleaded.

Other matters have been argued, but for the most part they have reference to the kind and quality of the work done by the contractor, an issue which we do not undertake to consider.

The decree below will be modified as indicated in the second paragraph of this opinion, and as thus modified affirmed. The costs of the appeal in the district court will be taxed to the city of Des Moines, and costs in this appeal will be apportioned one-half to the appellants and one-half to the appellees.

*Modified* and *affirmed*.