MAE SEYMOUR et al., Appellees, v. CITY OF AMES et al., Appellants.

No. 41984.

R. E. Nichol, for appellants.

Lee, Steinberg & Walsh, for appellees.

MITCHELL, J.—The appellees are the owners of an unimproved five-acre tract of land near the western limits of the city of Ames, Iowa, which tract of land borders upon a highway generally known as Lincoln Highway. All of the property of that portion of the city of Ames is platted or laid out in town lots with the exception of this particular five-acre tract. The highway commission had paved the Lincoln Highway along this tract with an eighteen-foot strip of pavement, and the city of Ames proposed to and did widen the pavement by adding a six and a half foot strip on each side of the pavement installed by the state highway commission. The city council on its own motion provided for the permanent improvement along said highway within the city of Ames. This was initiated by a proposed resolution of necessity, which proposed resolution of necessity is known as "Resolution No. 887", and was passed by the city council on the 6th day of January, 1930. Pursuant thereto a copy of said proposed resolution was published in the Ames Daily Tribune on the 10th and 17th days of January, 1930, which proposed resolution of necessity by its terms provided that the city council would meet at 8 o'clock on the 3d day of February, 1930, in the city hall, for the purpose of considering objections to the proposed resolution of necessity. No objections to the proposed resolution were filed by appellees or any other per-

son interested, and the appellees did not appear or make any objections at the time that said resolution came on before the city council. On the evening of the 3d of February, 1930, the proposed resolution, No. 887-A, was passed by four members of the council. The record shows that the city of Ames at that time had six councilmen and a mayor.

About the same time that the city of Ames sought to improve the highway by installation of the pavement, it also sought to install sewer and water connections along the highway, and assessed the cost of same to the adjacent property. The five-acre tract belonging to appellees, which was unimproved, is described as the south half of the southeast quarter of the southeast quarter of the southeast quarter of section 5, and said tract was never subdivided into blocks or lots. On the 7th of October, 1929, the city council of Ames passed a resolution, ordering the property owners to install connections for gas, water, and sewer to the curb line of the property adjacent to the proposed improvements; that said installation be made within thirty days from the adoption of the resolution "according to the plans and specifications of the City Manager of Engineering now on file in the office of the City Clerk," and further providing that if such connections were not made, the city engineer should cause the same to be made and the cost and expense thereof assessed against the property in front of which the improvements were made. The city clerk was given instructions in said resolution to give notice as far as practicable, to the property owners, and to publish the same in two issues of the Ames Daily Tribune, and by handbills posted along the streets proposed to be improved.

No plat was filed in the office of the city clerk, with the specifications for doing the work, showing where the water and sewer connections should be constructed, until after the work had been completed. Specifications governing contractors were filed with the city clerk on October 21, 1929, but such specifications did not prescribe the number of connections required or their location.

The appellees resided in the city of Ames, Iowa, at all times involved in these proceedings. They and their residence were known to the city officials, but no notice was ever given to the appellees except by publication in the newspaper, which was not directed to them personally, and by handbills, posted along the streets, which notice likewise was not addressed to the property owners. The appellees did not have actual notice of the passage of the resolution

or of the work that was being done, and did not know that their property was to be assessed for sewer and water connections until after they had been installed.

There were two other special assessments, not involved in this case, one for sanitary sewer, and one for storm sewer. And the total of the assessment of the four improvements against the five-acre tract of unimproved land amounted to $3,645. Twelve connections were constructed for this single parcel of land at the total cost of $661.91, or $55.17 per connection. And the assessment for paving was in the amount of $1,671.46.

The appellees commenced an action against the city of Ames, the city clerk, the treasurer of Story county, and the auditor of Story county, Iowa, to enjoin the enforcement and collection of the pretended special assessment for the pavement of their five-acre tract, and for the sewer and water connections, asking said special assessments be decreed to be null and void and that same be canceled of record. Said action was in two divisions. The first division prayed for relief as to the pavement assessment, and the second division prayed for relief as to the assessment covering the water and sewer connections. The city of Ames answered the petition, alleging that because the appellees did not file objections to the special assessment before the city council, they had waived irregularities in the proceedings, and that, because the appellees knew of the installation of the improvements and had failed to make objections, they are estopped to claim that the proceedings of the city council were void. For answer to the second count, the city of Ames filed a general denial.

The case proceeded to trial and the lower court entered a decree, granting the relief prayed for by the appellees, holding that said assessments were null and void and canceling of record said assessments and enjoining the collection of said assessments by said city of Ames and its officials and the county officials. And from this decree the city of Ames has appealed to this court.

In its argument the city of Ames admits that the resolution of necessity requires a three-fourths vote where the improvement is ordered on motion of the council without petition of the property owners, and it admits, as the proposed resolution was only voted for by four members of the city council, the required three-fourths vote was not secured and the decree of the district court was correct in so far as it applies to count 1 of appellees'

petition, unless the appellees are estopped from setting up these matters at this time.

So the only question that confronts us, as far as Division 1 of the appellees' petition is concerned, is whether or not the appellees were estopped from claiming that the city council had no jurisdiction. The appellants cite in support of their contention, the case of Gilcrest & Co. v. City of Des Moines, 157 Iowa 525, 137 N. W. 1072. In the cited case we find the following (page 529):

"The individual objectors to the assessments had petitioned the council for the paving of these streets, and thus set the proceeding in motion. They had been interested observers of the work as it proceeded, and, while numerous objections and protests were being entered by them during its progress, those objections, as far as appears from the record, were confined to the character and quality of the work, and not to the validity of the procedure or the authority of the city to order the paving. So far as they are concerned, the notice of hearing upon the resolution had effected its purpose, and justice requires that they be estopped, when the work is done and their streets improved, to set up a claim that the improvement was wholly unauthorized."

The situation in the Gilcrest case is far different from the one in the present case. The appellees in the case at bar did not petition for the paving. It was ordered upon motion of the council. The appellees in this case did nothing or refrained from doing anything that would lead the council to believe that they wanted the pavement. The record shows that the appellees talked both to the city clerk of Ames and to the mayor of Ames, and told both of them that they were opposed to the paving; that they could not afford to pay for it; and that they did not want it. This was before the work had actually been commenced. And the mayor of Ames, according to the record, told the appellees that he would do what he could for them.

An estoppel is based upon the idea that one who has made a certain representation or taken a certain position, should not thereafter be permitted to change his position to the prejudice of one who has relied thereon. In the case at bar the appellees informed the city officials that they were opposed to the pavement; that they could not afford to pay for it. And the record does not

show any conduct on their part that could possibly be the basis of an estoppel against them.

The second division covers the question of the assessment for the sewer and water connections. The city of Ames is claiming to act under section 5981 of the Code (1931) which provides as follows:

"5981. Gas, water, and other connections. They shall have power to require the connections from gas, water, and steam-heat-ing pipes, sewers, and underground electric construction, to the curb line of adjacent property, to be made before the permanent improvement of the street and, if such improvements have already been made, to regulate the making of such connections, fix the charges therefor, and make all needful rules in relation thereto, and the use thereof. If the owners of property on such streets fail to make such connections in the manner and within the time fixed by the council, it may cause the same to be made, and assess the cost thereof against the property for which they are made."

It will be observed that the section just quoted provides, among other things, that the council shall make all needful rules in relation thereto and the use thereof, and, also, that if the owners of the property on such street fail to make such connection in the manner or within the time fixed by the council, it may cause the same to be made and assess the costs thereof against the property for which they are made. Thus, under this section it is the duty of the city council by ordinance to fix the rules by which it will enforce its rights to compel the property owner to make the necessary sewer and water connections. In the case at bar the record shows that no rules were ever adopted in relation to the manner of construction and location of the sewer and water connections, while the resolution adopted shows that they should be constructed according to the plans and specifications on file in the clerk's office. There were no plans or specifications on file in said office. So, clearly, the council did not comply with an essential requirement of the statute. Further, there were no rules or ordinances with respect to notices to property owners to install sewer or water connections.

The resolution which the city passed on its face only contemplated that one sewer and water connection should be put in for each parcel of property. And yet, in the case at bar, although

there were no plans or specifications on file in the clerk's office, the city went ahead and constructed twelve sewer and water connections in front of the appellees' property, and is now seeking to assess appellees' property with the cost of twelve sewer and water connections.

This question was before this court in the case of Toben v. Town of Manson, 192 Iowa 1127, 185 N. W. 984, in which it was said:

"Whether the jurisdiction of the town and its council is to be limited strictly within the terms of this ruling, we think it unnecessary here to decide. So far as this case is concerned, there is nothing in the pleadings or proofs to indicate that the council, by its resolution, or by its notice or demand upon the property owners, called upon them to do more than to connect each piece or tract of property with the water and sewer mains at the curb line. Had the property owners seen fit to act upon the order and notice given by the town, and each had put in a single water and single sewer connection at the curb line of each separate tract, they would have complied literally and sufficiently with the demand made upon them. Had the owners done this, and the town, ignoring such compliance, had proceeded to put in other and additional connections, not asked for or desired by the owners, its act would clearly be unauthorized, and no right would be thereby acquired to assess the expense so incurred upon the adjoining property. If the right to multiply such expenses and increase such burdens upon property exists at all (and we do not deny it), it is an extraordinary power which should be held in leash, to be exercised only upon showing of good cause therefor."

In view of the opinion just cited, the city of Ames had no right to put in twelve sewer and water connections and then to assess the cost of same against a tract of property which was a single, unimproved, unplatted tract of land, belonging to the appellees. No showing is made in the record that would justify any such number of sewer and water connections at this time. The city, having constructed these sewer and water connections, has undoubtedly the right to control their use and to forbid the appellees using any of them until they shall pay for the privilege, and whenever the appellees want to use the sewer and water connections, they will be required to pay for them. We do not know whether or not

that time will ever come, but, until then, certainly, the city had no right to go ahead and install these sewer and water connections to the number of twelve against a single tract of land, and then to expect the owners of this tract to pay the cost.

Judgment and decree of the lower court was right, and same must be, and it is hereby, affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, KINTZINGER, and DONEGAN, JJ., concur.