C. F. Lytle, Appellant, v. Ames, Appellee.

No. 44202.

200

May 10, 1938.

Rehearing Denied September 23, 1938.

Edwin J. Stason and Stipp, Perry, Bannister & Starzinger, for appellant.

Marion Hirschburg, for appellee.

HAMILTON, J.—Since the questions arose on demurrer to the petition, perhaps it is well to set out in full the entire petition as amended. Omitting the formal parts it reads:

"1. The defendant is a municipal corporation organized and existing under the laws of the State of Iowa relating to such corporation, and is a corporation of the second class.

"2. The city council of the defendant city, by a resolution of necessity in legal form passed by it on the third day of February, 1930, after proper notice had been given, provided for the paving with concrete of a strip six and one-half feet wide on each side of the highway known as the Lincoln Highway in the City of Ames, and provided for the issuance of street improvement certificates, payable to the contractor in payment for the construction of the improvement.

"3. After the adoption of the resolution, the construction of the improvement was duly ordered by resolution, notice was given as required by law asking for bids for the work, competitive bids were received, the contract awarded to A. F. Heuer, the lowest responsible bidder, a written contract in legal form was entered into with him, his bond accepted, and the contract and bond were approved by the council. .

"A copy of the notice to bidders, and a copy of the contract with the said A. F. Heuer, respectively marked Exhibits A and B, are attached hereto and made parts of this petition, but the plaintiff is unable to set out or attach a copy of the specifications referred to in the contract for the reason that the defendant cannot furnish such copy, or is unwilling to furnish the same, or cannot or it is unwilling to furnish the plaintiff with the original so it can have a copy made.

"4. The plaintiff alleges that after the proceedings heretofore referred to were had, and relying thereon, the contractor performed the work in full compliance with the said contract and the specifications, the work was accepted as completed by the city council of the defendant city, the required plat and schedule was prepared and filed showing the proper proportion of the cost of the improvement to be assessed to the abutting property, the required assessment resolution was duly and legally adopted, the assessment certificates were issued, and the

work was paid for by the delivery of such certificates to the said contractor, all being done by appropriate proceedings duly and regularly had as required by law and by the terms of the said contract. The said certificates including the certificates now held by the plaintiff, were numbered and otherwise described, as follows: [Here follows list of certificates referred to] All of said certificates were dated September 2, 1930, all drew interest at the rate of six per cent per annum payable annually, and all are of the form of the copy of one of the certificates attached hereto, marked Exhibit 'C' and made a part hereof.

"5. The plaintiff states that the said certificates and all the rights of the said contractor have been assigned and transferred to the plaintiff herein.

"6. The plaintiff alleges that in an action tried and determined in the Supreme Court of this State, in an opinion rendered on the 23rd day of June, 1934, entitled Seymour v. City of Ames, the plaintiff being an abutting property owner, and the case being found in 218 Iowa 615, 255 N. W. 874, and subsequent pages, involving certificate No. 11084, for $1,671.46, above listed, the court held the said assessment void because the said resolution of necessity was passed by the said city council, consisting of six members, on its own motion, and not on petition of property owners, by the vote of four members, such number not being a three-fourths vote required by section 5999 of the Code of Iowa.

"7. On the 10th day of August, 1936, the plaintiff made demand upon the defendant for the amount due to him as the assignee of the rights of the contractor under said contract.

"8. The plaintiff's cause of action against the defendant is based upon the facts set forth herein to the plaintiff's loss and damage in the sum of $5,480.22, with interest at six per cent per annum payable annually from July 21, 1936.

"Wherefore, the plaintiff demands judgment against the defendant in the sum of $5,480.22 with interest thereon from July 21,1936, at the rate of six per cent per annum payable annually and asks judgment for cost."

There was a demurrer to the petition which we likewise set out in full:

"1. That the facts stated in the pleading do not entitle the plaintiff to the relief demanded for the reason that the facts

therein alleged show that the defendant's acts upon which liability is sought to be predicated were void at inception because of matters alleged in Paragraph 6 and seven of plaintiff's petition and no liability ever attached to said City because thereof.

"2. The petition shows that the cause of action, if any the plaintiff has, as set out in said petition is barred by the applicable Statute of Limitations for the reason that more than 5 years has elapsed between the time this cause of action, if any there be, arose, and the time of commencing this action.

"3. That the facts stated in the pleading do not entitle the plaintiff to the relief demanded for the reason that the facts therein alleged show that the City of Ames never guaranteed or pledged its credit to the payment of the special assessment certificate now involved.

"4. That the facts stated in the pleading do not entitle the plaintiff to the relief demanded for the reason that the facts therein alleged show that the City of Ames never had authority to guarantee or pledge its credit to the payment of the special assessment certificates sought to be recovered upon by this plaintiff.

"5. That the facts stated in the pleading do not entitle the plaintiff to the relief demanded for the reason that the facts therein alleged as set forth in plaintiff's Exhibit 'A' show that the City of Ames did not agree to give this defendant or his assignee valid and enforcible certificates but as set forth in plaintiff's Exhibit A-1 the City of Ames merely agreed that, 'Payment will be made to the contractor for said work in special assessment certificates to the extent that same are assessable by law, said assessment certificates to draw interest at the rate of six (6) per cent per annum from the date of acceptance of the work by the City of Ames, Iowa'

"6. That the facts stated in the pleading do not entitle the plaintiff to the relief demanded for the reason that the facts therein alleged show that the plaintiff herein holds such certificates subject to all defenses available to the City of Ames."

The trial court sustained the demurrer and from this ruling plaintiff has appealed. The only part of the exhibits attached to the petition having any bearing on this case is the following paragraph taken from the contract:

"Payment will be made to the contractor for said work in

special assessment certificates to the extent the same is assessable by law * * * in case of any deficiency between the 'amount of the contract price and the amount of said certificates, to be paid in warrants drawn on the consolidated budget fund available for the year beginning April 1, 1931, payable out of the proceeds of a tax levied therefor and from no other source, the city to incur no liability other than the levy, collection, and proper application of said tax and the proceeds thereof. Said assessment certificates and warrants, if such warrants be issued, shall be accepted by the contractor in full payment for all work done under his contract."

We might have some difficulty in determining the exact theory of the plaintiff if it were not for the fact that in his brief and argument he repeatedly asserts that his cause of action is upon "written contract". It will be noticed that by paragraph 8 of the petition he states that his cause of action "is based upon the facts set forth herein to the plaintiff's loss and damage in the sum of $5,480.22 with interest," etc. As we understand the issues presented by the petition as interpreted in the appellant's argument, plaintiff's cause of action is bottomed upon the theory that since the city had power under the general statutes (sections 5938-5940 of the 1935 Code of Iowa) to enter into a contract to pave its streets and to pay the contract price out of its general tax fund, and the contract having provided that the deficiency was to be paid from such fund, and since the special assessment certificates were held invalid, therefore the whole contract price fell under the term "deficiency" and the whole amount was recoverable under the express provisions of the contract. In presenting his first assignment of error appellant calls attention to section 5938 of the Code, which provides that cities shall have power to improve their streets, and also to section 5940 of the Code which provides:

"The expenses of such * * * improvements may be paid from the general fund * * * or partly from * * * such funds, or by assessing all or any portion of the cost thereof on abutting and adjacent property according to the benefits derived from such * * * improvements as provided in chapter 308", and it is on these statutory provisions that he bases his right to recover against the city.

We quote from appellant's brief and argument:

"It is, therefore, clear beyond question that the city had power to make the contract in question, which was that the city would pay the contractor in special assessment certificates and in warrants drawn on the general fund. The petition alleges and the demurrer admits that the city adopted a proper resolution ordering the construction of the improvement. The foregoing establishes that the contract in question is a contract which the city had power to make and is a valid and binding contract. That contract expressly provides that the city shall pay the contractor from the general fund to the extent that payment is not made from special assessments."

As worded, the foregoing statement cannot be accepted as a correct statement of the law, nor as a correct statement of the terms of the contract. This statement fails to take into account the limitations upon this general power to enter into a contract such as was entered into by the city council in this case.

The foregoing provisions of the statute, sections 5938 and 5940 do clothe the city with power to make street improvements and to pay therefor out of the general fund, or partly out of the general fund and partly by special assessments, but these statutory provisions do not confer upon the city council power to make or enter into the kind of · contract that was actually entered into in the instant case, by which it undertook to make payment of a major portion of the cost of the improvements by the issuing of special assessment certificates. Before the city council could lawfully enter into such a contract it was necessary that it first comply with other statutory provisions. The steps necessary to be taken are familiar to the legal profession and only a brief reference thereto is necessary.

Section 5991 of the Code provides: "When the council shall deem it necessary to construct * * * any street improvement * * * it shall, in a proposed resolution, declare such necessity, stating the kinds of material proposed to be used and method of construction, whether private property will be assessed* * * That the plat and schedule are on file in the office of the clerk shall be stated in the resolution."

Section 5993 provides: "Before the resolution of necessity is introduced, the council shall prepare and file with the clerk a plat and schedule showing" among other things, the street to

be improved, each lot proposed to be assessed together with a valuation fixed by the council, an estimate of the total cost and amount thereof which is estimated to be assessed against each lot.

Other sections of the Code provide for hearing before the city council and for notice and opportunity for owners of property proposed to be assessed to appear and file remonstrance and make objections, and at this hearing the resolution of necessity may be amended and passed, or passed as proposed. Then comes the limitation on the exercise of this power to enter into such a contract.

Section 5999 provides: " * * * If the improvement * * * is made on the motion of the council, such resolution of necessity shall require for passage the vote of three-fourths of all the members of the council * * *."

In the instant case it was on motion of the council and the resolution of necessity did not receive the required vote and this court in the Seymour case held the assessment void.

Hence, we see there is a specific limitation on the power to enter into a contract such as we have in this case. But appellant says:

"The petition alleges and the demurrer admits that the city adopted a proper resolution ordering the construction of the improvement".

Appellant is not here referring to the resolution of necessity, but to the resolution which follows the passage of the resolution of necessity.

Section 5998 provides for this resolution and says: *"After the passage* of the resolution of necessity, the council by another resolution may order the construction * * * of the improvement * * *."

Section 6000 provides: "The final vote on the resolution of necessity and the vote on the resolution ordering the improvement * * * shall be by yeas and nays and entered of record."

All the foregoing proceedings were prerequisite to the entering into of the contract involved in this case. These proceedings are matters of record open to plaintiff or to anyone interested in ascertaining whether the council in entering into such contract was clothed with proper legal power and authority to do so.

Section 6001 contains the provisions with reference to the contract and states: "When the construction * * * of any such street improvement * * * is ordered, the council shall contract," etc. Therefore, when appellant states in his argument, "The foregoing establishes that the contract in question is a contract which the city had power to make," such statement must be qualified.

The only legal question involved in the Seymour case was whether the resolution of necessity was legally passed and this question was answered in the negative, and for this sole reason the assessment was held illegal and void. The basis of that holding is that without a resolution of necessity passed by a three-fourths vote of the council, as the statute provides, the city had no power or authority to enter into a contract which provided for the payment of the major portion of the work and material by a special assessment. That the council was proceeding under chapter 308, section 5974 et seq., relating to special assessments is not open to question. Neither can there be any question that the contract upon which the minds of the parties met, and which they intended to enter into, was an absolute nullity for want of power to execute the same. This brings us face to face with the appellant's contention that no matter if the contract is a nullity, in so far as special assessments are concerned, it nevertheless is a binding and enforceable contract between the parties because, as appellant says, "the contract expressly provides that the city shall pay the contractor from the general fund *to the extent that the payment is not made from special assessments.*" However, upon examination we find the language of the contract entered into will not warrant the paraphrasing given it by appellant. The contract does not say, as appellant contends, "that the city shall pay the contract price out of the general fund of the city *to the extent that the same is not paid out of special assessments.*" It was only the "*deficiency*" that the city agreed to pay "in warrants drawn on the consolidated budget fund" and these warrants were payable "out of the proceeds of a tax levied therefor and from no other source." It is expressly provided that the city is "to incur no liability other than the levy, collection and proper application of said tax and the proceeds thereof." There is no provision in this contract for the issuing of warrants for any part of the cost covered by the invalid assessment certificates.

The use of the word "deficiency" in proceedings of this kind has a well understood meaning, and has reference to the portion of the cost which may not lawfully be assessed against property within the area subject to special assessment. It may arise because the property is not of such value as to carry its full proportionate amount of the cost, or because the council under the statute may exempt said property, or because the improvement is adjacent to property not subject to special assessment. In this connection see sections 6017, 6020, and 6021, Code of Iowa 1935. In all fairness, a reasonable construction requires that this restricted, specific meaning must be ascribed to this word "deficiency" contained in the contract. As heretofore stated, plaintiff's case is bottomed on the theory set out in his first assignment of error, and argument in support thereof, that since the certificates have been held invalid, the whole contract price falls within the compass of the word "deficiency", and recovery may be had as on an express contract to pay the entire contract price from the general fund. In passing on this phase of the matter, the trial court said:

"The expression 'to the extent that the same is assessable by law' found in the contract is substantially equivalent to 'to the extent that same is capable of being assessed under the law'. Even as to the deficiency between the contract price and the amount of the certificates the city incurred no express liability other than the levy and collection of the tax and there is no allegation that any such tax has been levied, nor is this a suit to compel the levy of a tax * * *. It seems that the contract provisions regarding payment of the deficiency above 'the amount of the said certificates' can more logically be said to refer to such a deficiency as is mentioned in section 6017 rather than to such a deficiency as has given rise to this case."

We are sure the court's reasoning is sound. By no logical process of reasoning can there be found in this contract an express provision by which the city obligates itself to pay in any other or different manner than is indicated by the trial court. If this is true, how then can the appellant prevail? This is an action at law to recover a money judgment against the city. That it is based on an express contract is strongly urged repeatedly by appellant in his brief and argument, and is reiterated in his reply argument. In answer to appellee's contention that the

cause of action was barred by the statute of limitations, appellant says: "The case at bar is founded on a *valid written contract* and under the undisputed facts the action was commenced within ten years from the date of the making of said contract," and again, in an endeavor to distinguish this case from the Creston cases and the Brooklyn case, infra, appellant says:

"In the case at bar the cause of action is for the recovery of the compensation due the contractor under the terms of a *written contract* entered into between the city and the contractor for the construction of an improvement. The contract was within the power of the city to enter into, and the contractor has performed his part of the contract to the satisfaction of the city. Under those circumstances this court has held that the contractor or his assignee is entitled to recover against the city." .

Citing First Nat. Bank v. Emmetsburg, 157 Iowa 555, 568, 138 N. W. 451, 456, L. R. A. 1915A, 982. The Emmetsburg case is not decisive of this case, as a careful reading will demonstrate. The Emmetsburg case was not decided on the basis that there was an express contract which bound the city. There is much discussion of the question of the powers of cities and the court does say in the discussion:

"There is, in our opinion, no legal reason, and there certainly is no moral one, whereby a municipal corporation should be permitted to reap the benefit of a fully completed contract and escape liability therefor under the plea of *ultra vires* where the power exists to contract. but the same has been exercised in a negligent manner and even so irregularly as to release noncontracting parties from liability. That a city may be estopped under such circumstances is well settled by our own decisions."

However, upon examination of this Emmetsburg opinion, it will be found that the basis of the decision is ratification of the contract and waiver of the right to object to payment, and the court also found that there had been a compromise settlement amounting to accord and satisfaction binding on the city. The holding was on the theory that the city in undertaking the construction of a sewer was exercising its proprietary or quasi private power or business powers, and in the exercise of such powers the city is governed by the same rules relating to estoppel, waiver, raitfication, etc., that govern a private individual or

corporation. As to whether the court was right in classifying the powers as they relate to such improvements, we are not now concerned, but set forth the foregoing analysis of the Emmetsburg case for the purpose of calling attention to the basis of the court's decision. Here is what the court said:

"Under the facts and the authorities already cited, there was a complete ratification of the contracts for sewer construction, and a waiver of the right to object thereto.

"Furthermore, it is conclusively shown that there was a compromise and an accord and satisfaction, and this was as binding on the defendant city as would have been the case had plaintiff been dealing with a private corporation or individual. Collins v. Welch, 58 Iowa 72, 12 N. W. 121, 43 Am. Rep. 111; Allen v. Cerro Gordo County, 34 Iowa 54; Grimes v. Hamilton, 37 Iowa 290; Mills County v. B. & M. R. R. Co., 47 Iowa 66. The city having become bound by the sewer contracts, as herein indicated, the plaintiff was entitled to judgment for the unpaid balance due on the contracts, being the amount of the unpaid and unwaived certificates of special assessment in plaintiff's hands. Scofield & Cavin v. City of Council Bluffs, [68 Iowa 695, 28 N. W. 20] supra; Ft. Dodge E. L. & P. Co. v. City of Ft. Dodge, 115 Iowa, [568] 573, 89 N. W. 7."

■ There is no question of estoppel, waiver, ratification, or accord and satisfaction involved in the instant case. Appellant also cites and relies on the case of Gilcrest & Co. v. Des Moines, 157 Iowa 525, 533, 137 N. W. 1072, 1075, wherein the court held the assessment as to certain lots void, and said:

"This defect is chargeable to the city or its officers and not to the contractor, and, in the event that upon further hearing it is found that the contract has been substantially performed, then, so far as the cost of the improvement would otherwise have been chargeable upon these lots, the contractor will be entitled to judgment against the city."

The eminent jurist who wrote the opinion in the Gilcrest case cites no authority and does not undertake to say that this recovery against the city may be had as on an express contract. However, following the cue of this opinion, the contractor, the Barber Asphalt Paving Company, later brought suit against the city (Barber Asphalt Paving Co. v. City of Des Moines, 191

Iowa 762, 183 N. W. 456) and the court allowed a recovery for damages based on tort due to negligence amounting to breach of contract, either of the written contract or implied contract (the opinion indicates the court was undecided which it was), for failure to make a valid assessment on the abutting property for the cost of the improvement, the court citing in support of such holding, Gilcrest & Co. v. City of Des Moines, 157 Iowa 525, 137 N. W. 1072; Ft. Dodge E. L. & P. Co. v. City of Ft. Dodge, 115 Iowa 568, 89 N. W. 7; Turner Improvement Co. v. City of Des Moines, 155 Iowa 592, 136 N. W. 656; Bucroft v. City of Council Bluffs, 63 Iowa 646, 19 N. W. 807. In the Turner Improvement Company case the cause of action is based on tort for negligence of the city in failing to do its duty, and judgment for damages was asked, and this court said the city was liable on the theory of implied contract to go forward with reasonable dispatch, and that the long delay amounted to negligence for which damages proven could be recovered. Likewise the basis of recovery in the Fort Dodge case was damages for tort due to neglect of duty.

We have examined all the cases cited and relied upon by appellant, and in none of them are we able to find authorization for recovery on the basis of express written contract. We cannot be mistaken in our view that in the instant case plaintiff seeks to recover on the written contract. In his statement of the nature of the action, appellant says:

"This is an action at law to recover on *written contract* for the construction of a paving improvement in defendant city, said contract providing as follows: (here follows the paragraph from the contract set out above in this opinion). The assessment levied against the properties of one owner was held by the court to be invalid, which invalidated the assessment certificates issued against that assessment. This action is brought to recover under the provisions of a *written contract* to pay any deficiency between the amount of the contract price and the amount of special assessment certificates, out of the general fund."

We can readily see why appellant was so careful to emphasize the written contract feature. In the recent decisions handed down by this court, apparently, every other theory of recovery has been foreclosed. See Johnson County Savings Bank v. City

of Creston, 212 Iowa 929, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926; Horrabin Pav. Co. v. Creston, 221 Iowa 1237, 262 N. W. 480; Stockholders Investment Co. v. Town of Brooklyn, 216 Iowa 693, 246 N. W. 826; C. W. Roland Co. v. Town of Carlisle, 215 Iowa 82, 244 N. W. 707.

In the instant case we are not dealing with a matter of irregularities in proceedings subsequent to the date of entering into the contract. There were no irregularities in any of the proceedings of the council, either as to form or substance. The trouble in this case lies farther back at the source. When the city undertook to operate under the Code, chapter 308, section 5974 et seq., relating to special assessments, the statutory conditions and limitations upon the power, authority, and manner of exercising the same as contained in said chapter sprang into action and their observance was mandatory and jurisdictional. In this case, then, the city council in entering into this contract was acting without authority, and of this fact the contractor and everyone else was bound to take notice. Citizens Bank v. City of Spencer, 126 Iowa 101, 105, 101 N. W. 643, 645. Appellant strenuously contends that the Spencer case is not controlling because the power of the city to construct the sewer in that case depended upon a valid ordinance, while in the instant case the city had power to pave under section 5938 of the Code, and to pay therefor out of the general fund without a resolution of necessity. We grant such power did exist as the law has been interpreted by our prior decisions. See Humboldt County v. Inc. Town of Dakota City, 197 Iowa 457, 196 N. W. 53. But it is also true that the statutory power to construct sewers and pay therefor out of the general fund has been a part of our statutory law for many years. See section 465, Code 1873, and corresponding sections in every subsequent code.

The troublesome question presented here is that the contracting parties were not proceeding under section 5938. Such a thing was not even contemplated, and the line of cases such as Dunn v. City of Sioux City, 206 Iowa 908, 221 N. W. 571; Lee v. Ames, 199 Iowa 1342, 203 N. W. 790; Humboldt County v. Inc. Town of Dakota City, 197 Iowa 457, 196 N. W. 53, cited by appellant have no application. The city council in the instant case was proceeding as cities and towns almost universally now proceed under the special assessment plan. The theory of this plan is that the property adjacent to the street improvement

receives a special benefit, and that the special assessment is not a burden but a payment for enhanced value which accrues to the property by reason of the improvement. Under this plan the city may impose the entire cost on abutting property if the cost does not exceed the benefits conferred. Jurisdiction and authority to make the improvements in this manner is found in chapter 308 of our Code. The provisions of the law must be strictly complied with. As stated in the Spencer case, supra:

"The law provides just how such matters may be done, and of this everyone is conclusively presumed to have notice. When acting without authority or beyond its powers, the city council cannot estop the city, for, no matter what its representations, a party dealing with it is bound to take notice of all statutory limitation upon its authority. There can be no recovery, even upon *quantum meruit* in such cases, especially where, as here, the city did not obligate itself to pay for the improvement, and was undertaking to do but a small part of it for its own benefit. Any other rule might completely ruin any city, for the legislature could not, if the converse were true, limit the powers of a council. Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa [234] 254, 91 N. W. 1081. When making any sort of a contract, the city officials impliedly represent that they have authority to do so, but such representations are not binding upon the city, for the reason that the powers of these officials are limited, and we are bound to look to the law for their authority and the validity of their acts. These views are well sustained by authority." (Citing long list of cases.)

We can see no difference in principle in the Spencer case, from which we have just quoted, and the case at bar. In one the ordinance did not receive the necessary three-fourths vote, while in the other the resolution of necessity did not receive the necessary three-fourths vote of the city council. In either event the council was without power to contract in the manner proposed. Had there been no attempt to proceed under chapter 308, a different situation would be presented. See Humboldt County v. Incorp. Town of Dakota City, 197 Iowa 457, 196 N. W. 53. That the city council was without power to enter into the contract under the provisions of chapter 308 has already been determined by this court. Seymour v. City of Ames, 218 Iowa 615, 255 N. W. 874. It would indeed be a strange public

policy that would permit the contractor to recover from the city under an express contract—the same identical contract which has been held invalid for lack of power to enter into the same— and thus flout the limitations of the statute and inflict upon the taxpayer of the city an obligation never intended by the council. This certainly cannot be the law. We must admit that the authorities are not perfectly clear and free from ambiguity and inconsistencies, and some of the earlier cases, such as Bucroft v. City of Council Bluffs, 63 Iowa 646, 19 N. W. 807, and other cases following the holding in the Bucroft case, lend apparent support to plaintiff's theory. These early cases were disposed of by the court in the Spencer case, supra, in the following language:

"In some of the cases relied upon by the plaintiff there are chance expressions to the effect that the city is liable in such cases as upon a guaranty or contract; but these must be taken in connection with the facts and the issues involved. The cities were held liable in each of these cases on the theory of an implied obligation or contract to make legal assessments."

Some of these holdings are not in accord with our more recent cases, namely, the Creston cases and the Brooklyn case heretofore cited.

We cannot escape the conclusion that a sound public policy imposes on the contractor a duty to ascertain whether the resolution of necessity has received the necessary three-fourths vote whereby the council is clothed with power to enter into the contract proposed. We certainly should not accept a policy that would permit the contractor, even though he knew (and he is required to take notice) that the city council did not possess the power to enter into the contract providing for payment by special assessment certificates, to nevertheless shut his eyes and hold his tongue and assume an attitude of indifference, on the theory that it is immaterial to him; for since the city has general power to pave its streets, if the special assessment certificates are held invalid, he may still recover against the city. Such a policy is an open invitation to the commission of fraud, and provides a very effective means of circumventing the plain provisions of the statute. See as supporting our views: McPherson v. Foster Bros., 43 Iowa 48, 22 Am. Rep. 215; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91 N. W. 1081; Johnson County

Savings Bank v. City of Creston, 212 Iowa 929, 231 N. W. 705, 237 N. W. 507, 84 A. L. R. 926; Horrabin Paving Co. v. City of Creston, 221 Iowa 1237, 262 N. W. 480.

We deem it inadvisable and useless to enter upon a more extended discussion of the numerous cases cited in the briefs. Since we have concluded there was no express written contract to pay plaintiff out of city funds (excepting of course the deficiency as herein defined), it necessarily follows that there can be no recovery of loss or damages for breach of written contract. Appellant has chosen to stand or fall on express written contract. It, therefore, follows that the decree of the trial court must be and is affirmed.—Affirmed.

STIGER, C. J., and MITCHELL, SAGER, MILLER, KINTZINGER, DONEGAN, and RICHARDS, JJ., concur.