**CITY OF HOUSTON et al. v. SCANLAN et al.**

No. 11407.

Court of Civil Appeals of Texas. Galveston.

July 23, 1942.

Rehearing Denied Oct. 1, 1942.

Lewis W. Cutrer, City Atty., and Ernest H. Folk, First Asst. City Atty., both of Houston, for appellant City of Houston.

Taliaferro, Graves, Hutcheson & Fahey, of Houston, for appellee Texas Pacific Coal & Oil Co.

No brief filed for Scanlan and others.

MONTEITH, Chief Justice.

This action was originally brought by Lillian Scanlan and Stella Scanlan against appellee, Texas Pacific Coal & Oil Company, and appellant, the City of Houston, to cancel certain paving certificates issued against them on numerous grounds, including an allegation that the paving did not substantially comply with the plans and specifications therefor.

The Texas Pacific Coal & Oil Company filed a cross-action against the Scanlans seeking to collect the paving certificates from them and an alternative cross-action against the City of Houston, in which it alleged that, if it was not entitled to recover on said paving certificates from the Scanlans, the City of Houston was liable to them, on the theory that the City of Houston had impliedly contracted with their assignor to furnish it the necessary right of way for a 52-foot street and that it had failed to do so, thus making it impossible for it to comply with the plans and specifications. The Texas Pacific Coal & Oil Company in their cross-action against the City of Houston filed on May 27, 1938, also contended that the city should have accepted the paving in question in 1928, and that in failing to do so the city had deprived it of interest which would have accrued to it on said paving certificates from 1928 to December 9, 1936.

The City of Houston answered the cross-action of the Texas Pacific Coal & Oil Company by general demurrer, general denial, and a sworn plea that Texas Pacific Coal & Oil Company never acquired any valid assignment of a cause of action against it from the San Jacinto Construction Company; a plea that any cause of action asserted against the City of Houston was barred by the two and four year statutes of limitations, and a plea that under the specific provisions of the contract between the City of Houston and the San Jacinto Construction Company and under the specific provisions of the ordinance authorizing the issuance of the paving certificates in question, the paving contractor had no claim against the City of Houston, but was required to look alone to the paving certificates for payment.

By trial amendment the City of Houston also pleaded res adjudicata to the cross-action of Texas Pacific Coal & Oil Company, on the ground that all questions involved in such cross-action were either raised and adjudicated in the Scanlans' injunction suit above referred to, or could and should have been there raised and adjudicated.

At the conclusion of the evidence, the court dismissed the jury and rendered judgment in favor of Lillian Scanlan and Stella Scanlan, setting aside said paving certificates, and in favor of the Texas Pacific Coal & Oil Company on its cross-action against the City of Houston in the sum of $5711.69. The City of Houston appeals from this action of the trial court.

This suit involves the paving laid on the south side of Calhoun Avenue, between Main and Fannin Streets, in the City of Houston, adjacent to the property of Lillian and Stella Scanlan. The paving in question was put down by the San Jacinto Construction Company in 1927. The plans and specifications therefor called for a 52-foot paved street, with curbs and gutters. After the contract for such pavement had been let, and after work had started thereon, the Scanlan sisters, in 1927, brought suit for a temporary and permanent injunction to restrain the City of Houston and the paving contractor from laying pavement on the south 10 feet of the proposed right of way, on the ground that such land was not a part of the street but was instead the property of the Scanlan sisters. This injunction suit was styled Kate Scanlan et al. v. San Jacinto Construction Company et al., No. 135962 on the docket of the district court of Harris County. The Scanlan sisters were successful in their suit and a temporary injunction issued on July 16, 1927. On July 19, 1928, judgment was rendered in the trial court awarding the Scanlan sisters a permanent injunction as prayed for, and the case was affirmed by the Supreme Court, 120 Tex. 264, 37 S.W.2d 718, and a mandate was issued thereon in 1931. Under the terms of this injunction, the contractor did not pave Calhoun Avenue between Main and Fannin Streets to a width of 52 feet, but did pave it to a width of 42 feet, leaving unpaved the strip on the south which the injunction restrained them from paving.

The Calhoun Avenue paving, with the exception of the block between Main and Fannin Streets, was accepted and paving certificates issued in May, 1928. On December 3, 1936, more than nine years after the paving was put down, the Texas Pacific Coal & Oil Company, claiming to be the assignee of the San Jacinto Construction Company, filed its petition with the City of Houston, requesting the city council to accept the pavement between Main and Fannin Streets on Calhoun Avenue and to issue paving certificates against the adjacent property owners. The petition was granted, and the City of Houston accepted the paving, held the required hearing, and over the objections of the Scanlan sisters issued paving certificates against the Scanlan sisters aggregating $1515.58. There-

after, this suit was filed by the Scanlan sisters.

Under its first and second propositions, the City of Houston contends that since the contract between the paving contractor and the City of Houston and the ordinances authorizing the issuance of said paving certificates both specifically provided that there should be no liability on the part of the City of Houston, in the event the paving certificates were for any reason uncollectible, and that in no event should the City of Houston be liable to the contractor for any sums designated to be paid by abutting owners, and that the contractor should look to the abutting owners for payment thereof, the court should have rendered judgment against the Texas Pacific Coal & Oil Company's cross-action.

The contract between the City of Houston and the San Jacinto Construction Company for the paving of Calhoun Avenue, including plans and specifications, were introduced in evidence. Sections 5 and 6 of the contract, in so far as they are here material, read:

"(c) That the owners of property abutting upon said street named shall pay to the contractor the whole cost of installing concrete curbs in front of their respective property, where satisfactory curbs are not already in place, and all of the remainder of said costs of said improvements, after deducting the amounts herein specified to be paid by the City and said railroad and street railway companies. * * * *It is expressly agreed that said City shall not in any manner be liable to the said contractor for any part of the cost of said improvement herein designated to be paid by the owners of abutting property, but for such portion the contractor shall look alone to the said owners and their property, and that the said City does not in any manner guarantee the collection thereof, nor shall it become in any manner liable for the cost of collecting the same, nor in enforcing the lien thereon, but the City agrees to do all acts, and pass all ordinances and resolutions required and permitted by law, for the purpose of assisting said contractor or assigns in collecting or enforcing the payment of the said costs against said owners and of said lien against said property. * * * *"

"6. The City shall not in any manner be liable for the payment of any sum mentioned in the said certificates, or for the costs of collecting or enforcing same but the City shall, whenever demanded by the contractor or holder of said certificates, fully execute all powers conferred upon it by law or its ordinances to aid the enforcement of the lien securing same, and the collection of the same. But it shall not be liable in damages for any failure to collect said certificates or enforce the lien thereon." (Emphasis ours.)

The assessment ordinance under which the paving certificates in question were issued was introduced in evidence. Section 4 of said ordinance provides: "that the City of Houston shall not be liable in any manner for the payment of any sum hereby assessed against any owner of property or his property, or against any steam railroad or street railway, but they, the said Texas Pacific Coal and Oil Company, or assigns, shall look solely to the said persons or corporations and their property for the payment of said sums; * * *."

The last paragraph of Section 5 of the ordinance in question provides: "And said certificates shall further provide that the City of Houston shall exercise its charter powers when requested so to do by the holder of said certificates to aid in the collection thereof; but the City of Houston shall be in no wise liable to the holder of said certificates for the payments of the amounts evidenced thereby, or for any costs or expense in the premises, or for any failure of the City Council or any of its members in connection therewith."

The foregoing quotations from the written contract between the City of Houston and the San Jacinto Construction Company, under which said paving was put down, and the foregoing quotations from the assessment ordinance authorizing the issuance of the paving certificates state in plain and unmistakable terms that under no circumstances shall the City of Houston ever be or become liable to the contractor for any part of the costs of said improvements, and that the city did not in any way guarantee the collection thereof, and that the city shall not be liable in damages for any failure to collect said certificates or enforce the lien thereon. These provisions were embodied in the specifications upon which bids for the contract were taken and it is to be presumed that they were taken into consideration by the contractor in figuring its costs.

It is admitted that the City of Houston made all payments due the contractor for paving intersections. The only question

presented under the foregoing propositions is whether the assignee of the paving contractor can disregard the provisions of the written contract and can force residuary liability upon the City of Houston for the payment of the paving certificates assessed against the abutting land owners, or recover damages from the city for an alleged failure to provide a right of way, in the event the certificates are uncollectible or invalid.

The record shows that upon presentation by the Texas Pacific Coal & Oil Company of its petition to the city counsel of the City of Houston in December, 1936, requesting the assessment of the property owners in the block between Main and Fannin on Calhoun Avenue, the city council held hearings and proceeded to assess the property owners as requested. Thereafter, when the Scanlan sisters filed suit to contest the assessment in question the City of Houston defended the suit and sought to uphold the assessment.

Appellants contend that where either a paving contract or an assessment ordinance contain such provisions as those involved in the instant case, there is no residuary liability upon the city in the event of the invalidity or uncollectibility of the paving certificates.

■ We have been cited by appellants to only one decision in point by the courts of this state, and have found no others. The questions involved, however, have, in our opinion, been decided in favor of appellants' contention by the courts of other states and are supported and determined by the established principles of law. Appellants rely upon the case of Panhandle Construction Company v. City of Spearman, Tex.Civ.App., 83 S.W.2d 425, 428, writ of error dismissed.

In the Spearman case the defendant city, on April 7, 1931, entered into a written contract with plaintiff contractor to pave, grade and drain certain streets. The contract provided that abutting owners should pay all costs for curbs and gutters and 9/10 of the remaining costs, and that the remaining 1/10 of the cost should be paid by defendant city as work progressed. Upon completion and acceptance by the city of each unit the sums assessed against abutting property became payable in five equal annual installments. One of the abutting property owners was the county. The paving assessment against it was held to be uncollectible. Plaintiff sued for the cost of paving in front of the county property, on the grounds that the city was liable either as owner of the property or because it had failed to give collectible paving certificates which constituted a valid lien on the county's property.

The appellate court held that the city was not liable for the costs of paving in front of the county's property, because there was nothing in its contract which provided that the city should pay such sums. It stated in its opinion: "If the county in fact owned said block, we are of the opinion that the city is not liable, even though the constitutional questions above mentioned were not present, there being nothing in the city's contract or the conduct of its officers upon which any such liability could be based."

It does not appear from the opinion of the court that the contract between the city and the paving contractor made any specific provision as to whether or not there should be any residuary liability on the city in case the assessments were invalid or uncollectible. The court held, however, that, even though the contract was entirely silent on that point, the contractor must look alone to the abutting property owner for that part of the assessment against the property owner, and that the city was not liable even though the assessment was uncollectible as against him.

■ The rule laid down by the textbook writers and supported by the great weight of authority from other jurisdictions is that when a paving contract contains a provision that there shall be no liability on the city to pay for paving when the paving certificates are uncollectible for any reason, there is no responsibility on the city.

■ McQuillan on Municipal Corporations, Vol. 5, page 421, Section 2095, in an able and comprehensive discussion of this particular question, says:

"Where the contractor agrees to look to the special assessment for payment and takes the risk of its invalidity he cannot recover from the municipality in case the assessment is set aside.

"Note 94. The assignee of a contract for street improvements is bound by a stipulation to the effect that the payment shall be alone by assessment and that in no event shall the city be liable.

" * * * If the special assessments are not or cannot be realized, in whole or in part, due to neglect or defect or invalidity of the proceeding arising from *any* cause, *whether there is municipal liability to the contractor for the whole or any part of the work performed is to be determined from the controlling law, and the terms of the contract.*

" * * * *It is generally held that the municipality is not liable for the payment of void certificates unless the particular contract so provides. The contractor is charged with knowledge of the law, and takes the certificates at his own risk.*" (Emphasis ours.)

This rule is upheld by the following authorities from the courts of other jurisdictions: Municipal Securities Corporation v. Kansas City, 265 Mo. 252, 177 S.W. 856, by the Supreme Court of Missouri; Rhode Island Mortgage & Trust Co. v. City of Spokane, 19 Wash. 616, 53 P. 1104, by the Supreme Court of the State of Washington; Holswade v. City of Huntington, 96 W.Va. 124, 122 S.E. 449, 451, by the Supreme Court of West Virginia.

In the last-mentioned case it is held that "the contractor, as well as any purchaser, is charged with notice that the city does not guarantee them and is in no way liable. The contractor takes them at his own risk. * * * It is quite generally held that the municipality is not liable for payment of void or unenforceable certificates, unless the contract makes it liable." Citing McQuillan on Municipal Corporations, Vol. 8, page 774, and numerous cases.

In the case of City of Enid v. Warner-Quinlan Asphaltic Company, 62 Okl. 139, 161 P. 1092, by the Supreme Court of Oklahoma, it is held that: *"Where a contract is entered into by a city for paving its streets, providing for the payment of such paving by assessments against the abutting property of the streets paved, and said contract also provides that the city shall be exempt from any direct liability on account of such paving, and upon completion and acceptance of such paving, the city delivers to the contractor the legally authorized and legally issued assessments and tax warrants for all of the paving done against the abutting property of the streets paved, and a part of said assessments and tax warrants are against abutting property belonging to the United States, which assessments cannot be enforced, and which assessments are not paid, an action will not lie against said city to recover for a breach of said contract, the amount of such assessments as are against said property of the United States, alone upon the ground that such assessments against the property of the United States are not enforceable."* (Emphasis ours.)

The rule above laid down is followed in the following well-considered cases: Lytle v. City of Ames, 225 Iowa 199, 279 N.W. 453, by the Supreme Court of the State of Iowa; City of Pontiac v. Talbot Paving Co., 7 Cir., 94 F. 65, 36 C.C.A. 88, 48 L.R.A. 326; Id., 7 Cir., 96 F. 679; Crawford v. City of Mason, 123 Iowa 301, 98 N.W. 795, by the Supreme Court of Iowa, and numerous other cases from the courts of other jurisdictions.

Appellee, Texas Pacific Coal & Oil Company, relies upon the case of City of Dallas v. Shortall, Tex.Civ.App., 87 S.W. 2d 844, reversed by the Supreme Court in, 131 Tex. 368, 114 S.W.2d 536, to sustain its contention that the City of Houston was liable to it for the face value of the paving certificates. We do not think that this case is authority for this proposition.

While there are other propositions and points presented by appellant City of Houston in its brief, as we view the record, the points above referred to raise the controlling questions in the case and render the remaining assignments immaterial. Under the above authorities, we think that appellant, City of Houston, cannot be held liable for the paving covered by said certificates or for damages caused by their invalidity.

It follows that the judgment of the trial court in favor of appellee, Texas Pacific Coal & Oil Company, should be reversed and judgment here rendered that it take nothing against appellant, City of Houston. No attack having been made in this court against the judgment of the trial court in favor of Lillian and Stella Scanlan, it follows that the judgment in that respect must remain undisturbed.

Reversed and rendered in part, and in part undisturbed.