**H. L. MUNN LUMBER COMPANY,**
**Appellant,**

v.

**CITY OF AMES, Iowa, Appellee.**

No. 53919.

Supreme Court of Iowa.

May 7, 1970.

**814**

------◆------

Donald L. Smith, of Reynolds, Gilchrist, Nutty, Smith & Sexton, Ames, for appellant.

Herschel G. Langdon and Robert H. Helmick, of Herrick, Langdon, Belin & Harris, Des Moines, for appellee.

RAWLINGS, Justice.

By action in equity plaintiff challenged a special assessment levied by the Ames City Council relative to acquisition and improvement of land for a central business district parking facility. Trial court upheld validity of the assessment against plaintiff's property but found the amount inequitable and reduced it. Plaintiff appeals. Defendant cross-appeals challenging reduction of the assessment. We find the disputed assessment invalid and accordingly reverse.

The factual situation presented will be set forth in chronological order as best determined from an unavoidably complex record.

The community project here involved first started in 1964, with appointment of a study committee which recommended the program be implemented with cost attendant upon acquisition and improvement to be financed by sale of parking meter revenue bonds.

April 6, 1965, the Ames City Council adopted a resolution authorizing execution of a Memorandum of Agreement with Chicago and North Western Railway Company for acquisition by the City of land to be used for the facility. That agreement was executed April 8, 1965, on behalf of the municipality, and May 19, 1965, by the railway. The City thereby agreed to purchase and pay $716,000, for the land, subject to these conditions, (1) closing of a railroad crossing, and (2) sale of $625,000 parking lot revenue bonds. The first condition was satisfied February 19, 1965.

Subsequently the city council was advised as to enactment of what is now identified as Code chapter 390A, effective July 4, 1965, granting cities and towns the power to levy special assessments in connection with off-street parking improvements.

June 15, 1965 the council determined $340,000 of the project cost should be defrayed by levying special assessments against benefited properties, the balance to be paid from sale of bonds.

July 20, 1965, a resolution was passed by the council fixing August 3, 1965, as the time for hearing on necessity of the improvement.

August 3, 1965, the council, by resolution, found there existed a need for the facility and directed hearing be held September 7, 1965, relative to issuance of $440,000 revenue bonds.

At the September 7th hearing, authority was granted by the council for issuance of these bonds, the proceeds to be deposited in a Construction Fund.

September 23, 1965, the City agreed to deposit $440,000 received from bond sales, plus $107,000 from other City funds, in an escrow account, later to be paid the railway under the Memorandum of Agreement.

October 20, 1965, there was filed a plat and schedule of proposed assessments to be levied. November 16, 1965, objections thereto were filed. That same date the council designated November 30th as the time for an informal meeting to consider

these protests. That hearing was not held because of the council's apparent dissatisfaction with the assessment proposal.

December 7, 1965, a resolution was introduced and on December 21st adopted, establishing a benefited district. It provided 38.7% of the *total* project cost be defrayed by revenue derived from special assessments.

Commencing in October 1965, the City began paying the railway company out of the above mentioned escrow account. These payments continued until June of 1967, when the fund had been completely disbursed.

April 26, 1966, at an informal council meeting, the program, as planned, was explained.

May 18, 1966, a plat was filed showing each benefited property and the respective assessments scheduled to be made.

January 17, 1967, the city council adopted a proposed resolution of necessity and established February 21st, 1967, as the time for hearing. Notice was accordingly given.

At that meeting this plaintiff and 43 others protested the assessments. They were overruled and the resolution formally adopted.

In March 1967, the railway company gave the city written permission to start improvements on the land.

July 11, 1967, the railway executed a deed conveying the property to defendant City, but that deed was not delivered to the vendee until November 16th when the final and last payment was made.

The record indicates the facility was completed late in the fall of 1967.

January 2, 1968, the city council passed a resolution making the property assessments in accord with the plat and schedules previously filed.

Total cost of land acquired and improvements thereon was $1,027,950.44. Of that amount $337,985.92 was assessed against properties in the designated benefit area which, though not determinative, exceeded cost of improvements effected on the purchased property.

Brevity dictates we consider only such of plaintiff's 13 propositions urged in support of a reversal as are essential to a determination of this appeal.

I. Our review is de novo. Code sections 390A.38 and 391.88–391.90. See also Buda v. Fulton, Iowa, 157 N.W.2d 336, 338.

II. This is a case of first impression under Code chapter 390A. Some degree of precedent is available, however, by reason of the fact that this legislative enactment incorporates, by reference, numerous provisions of chapter 391, recently considered in Wharton v. City of Oskaloosa, Iowa, 158 N.W.2d 834. Incidentally, we there held, special assessments for a municipal sewer facility could not be legally levied upon properties located in a benefited district on a front foot basis alone. See also in that regard Chicago and Northwestern Railway Co. v. City of Webster City, 256 Iowa 201, 204–205, 127 N.W.2d 115; Village of Norwood v. Baker, 172 U.S. 269, 19 S.Ct. 187, 43 L.Ed. 443; Crampton v. City of Royal Oak, 362 Mich. 503, 108 N.W.2d 16, 20–27; Opinion of the Justices, N.H., 254 A.2d 273, 277; and Wing v. City of Eugene, 249 Or. 367, 437 P.2d 836, 838–843.

The real significance of chapter 391, is probably best demonstrated by section 390A.6, which provides: "All necesssary proceedings, forms and requirements not included in or contemplated or regulated by the provisions hereof shall be in accordance with the provisions of chapter 391 including definitions and regulations relating to valuations, benefited property, estimates, assessments, plans, specifications, schedules, resolutions, protests, objections, remonstrances, bids, deposits and contracts."

III. Fundamentally plaintiff asserts the resolution of necessity adopted by defendant City relative to the challenged assessment *for acquisition and improvement* of the parking facility is invalid because the land to be used had been previously acquired.

This first brings into focus the Memorandum of Agreement executed by defendant City and the railway company almost two years prior to adoption of the controverted resolution.

Among other things that instrument provided, as aforesaid, it was subject to closing of a road and issuance of $625,000 revenue bonds by the City. Admittedly the road was closed February 19, 1965, and bonds were sold September 7, 1965, but only in the amount of $440,000.

This sale, in a lesser sum than that specified in the agreement does not, per se, alter the resultant situation.

The qualifications attendant upon closing of the road and sale of bonds were conditions precedent. 17A C.J.S. Contracts § 338, page 318; 17 Am.Jur.2d Contracts, section 321, page 751; 3A Corbin on Contracts, sections 627–636; and Restatement, Contracts, section 250.

■ But as stated in Locke v. Bort, 10 Wis.2d 585, 103 N.W.2d 555, 558, 81 A.L.R. 2d 1331: "The insertion of a condition precedent in a contract does not render the same void but only delays the enforceability of the contract until the condition precedent has taken place."

Furthermore any condition precedent upon sale of bonds in a lesser sum than that specified in the Memorandum of Agreement was waived or excused by defendant vendee.

■ That is probably best demonstrated by this statement in Miracle Construction Company v. Miller, 251 Minn. 320, 87 N.W.2d 665, 670: " * * * a party may waive a condition precedent to his own performance of a contractual duty, when such condition precedent exists for his sole benefit and protection, and compel performance by the other party who has no interest in the performance or nonperformance of such condition." See also Godfrey Co. v. Crawford, 23 Wis.2d 44, 126 N.W. 2d 495, 497; 17 Am.Jur.2d, Contracts, section 392, page 838; 3A Corbin on Contracts, section 761; and Restatement, Contracts, section 294.

IV. What then was the resultant legal effect or status of the Agreement?

■ That question finds a ready answer in Briley v. Madrid Improvement Co., 255 Iowa 388, 122 N.W.2d 824, where we said in 255 Iowa 394, 122 N.W.2d 827: "It is well established in this jurisdiction that an executory contract for the sale of land, * * * unless otherwise expressed, works an equitable conversion whereby the interest of the vendor becomes personalty and the vendee, in the contemplation of equity, is actually seized of the estate. (Authorities cited)."

And in the case of In re Estate of Bernhard, 134 Iowa 603, 606, 112 N.W. 86, 87, this court stated: "Where such conversion is by contract, it is only necessary as a general rule that the contract be enforceable."

■ That is followed by these apt statements at 134 Iowa 607, 112 N.W. 87: "And it is also true that, when the title passes under the terms of the contract, it relates back to the date of the contract, and the vendor is treated as holding the legal title as trustee for the purchaser. This result is said to rest upon the principle that equity regards that as done which is agreed to be done. Story's Eq.Jur. §§ 789, 790, 1212 (12th Ed.); 1 Pom.Eq. Jur. (2d Ed.), § 368, and cases cited. * * * In Kerr v. Day, 14 Pa.St. 112, 53 Am.Dec. 526, it is said: 'It is settled that an estate under contract of sale is regarded as converted into personalty from the time of the contract, notwithstanding

an election to complete the purchase rests entirely with the purchaser, * * *.' " See also Mitchell v. City of Parshall, N.D., 108 N.W.2d 12, 14–15; 91 C.J.S. Vendor & Purchaser, § 106, page 1009; 55 Am.Jur., Vendor and Purchaser, section 356, page 782; 1A Corbin on Contracts, section 272; Marshall on Iowa Title Opinions and Standards, section 1.1(b) (4), page 8; and 12 Iowa L.Rev. 179.

Despite defendant's argument to the contrary, it is to us evident the equitable conversion doctrine is well established and here applicable.

Stated otherwise there is nothing attendant upon the acts or conduct of defendant City and the railway company disclosing a contrary intent. Additionally the City at all times proceeded upon a meritorious assumption the vendor would honor all purchaser rights under the agreement.

As we view the situation, equity and justice compel a holding that: (1) there was a voluntary waiver of the condition precedent relative to sale of bonds, (2) the agreement served to effect an equitable conversion by which the City became seized of the estate, and (3) when title passed it related back to execution of the agreement.

Any other conclusion would be totally inconsistent with conduct on the part of defendant City and railway company, all as set forth above, which need not be repeated.

From this it follows that to all intents and purposes defendant City acquired the land essential to construction of the facility long before adoption of the February 21st, 1967, resolution of necessity.

V. The question next posed is whether that resolution *for acquisition and improvement* of the parking lot, adopted subsequent to such acquisition, vested in the city council jurisdiction requisite to the lawful levy of a special assessment upon property owned by plaintiff.

Seymour v. City of Ames, 218 Iowa 615, 255 N.W. 874, involved validity of special assessments levied relative to municipal sewer and water improvements. Trial court there held the assessments void and enjoined their collection because the resolution of necessity was not adopted by a required three-fourths vote of the council. We affirmed.

In a companion case, Lytle v. City of Ames, 225 Iowa 199, 279 N.W. 453, the installing contractor in Seymour, supra, having taken assessment certificates in payment, later assigned them to Lytle. By reason of the Seymour holding, Lytle commenced an action against the City seeking recovery on contract. This court held the contract a nullity and in so doing said, loc. cit., 225 Iowa 207, 279 N.W. 457: "The only legal question involved in the Seymour case was whether the resolution of necessity was legally passed and this question was answered in the negative, and for this sole reason the assessment was held illegal and void. The basis of that holding is that without a resolution of necessity passed by a three-fourths vote of the council, as the statute provides, the city had no power or authority to enter into a contract which provided for the payment of the major portion of the work and material by a special assessment. That the council was proceeding under chapter 308, (chapter 391, Code, 1966) section 5974 et seq., relating to special assessments is not open to question. Neither can there be any question that the contract upon which the minds of the parties met, and which they intended to enter into, was an absolute nullity for want of power to execute the same."

Also at page 212, 225 Iowa at page 459, 279 N.W. is this statement: "When the city undertook to operate under the Code, c. 308, § 5974 et seq., relating to special assessments, the statutory conditions and limitations upon the power, authority, and manner of exercising the same as contained in said chapter sprang into action and *their observance was mandatory and ju-*

*risdictional.* In this case, then, the city council in entering into this contract was acting without authority, and of this fact the contractor and every one else was bound to take notice." (Emphasis supplied.)

In Manning v. City of Ames, 192 Iowa 998, 184 N.W. 347, an attack was made upon sufficiency of a resolution of necessity to confer jurisdiction on the City to levy assessments for street improvements as to costs not therein described. Finding the assessments void, we stated at 192 Iowa 1001–1002, at 184 N.W. 349: "Our holdings are to the effect that substantial compliance with the terms of the statute is a condition precedent to obtaining jurisdiction for making the improvement and the levying of taxes therefor. (Authorities cited)."

Roznos v. Town of Slater, 254 Iowa 77, 116 N.W.2d 471, dealt with questioned sufficiency of the hearing notice on a proposed resolution of necessity regarding a contemplated municipal sewer system. At 254 Iowa 84, at 116 N.W.2d 475, is found this comment: "It is also true *in matters of this kind, where jurisdiction depends upon legislative direction, strict compliance with those directions is required. * * *.*" (Emphasis supplied.)

Also, in Davenport Locomotive Works v. City of Davenport, 185 Iowa 151, 169 N.W. 106, an issue was presented regarding jurisdiction of the city council to specially assess for costs of a sewer improvement. There we observed, loc. cit., 185 Iowa 155, 169 N.W. 107: "The rule is well established that the adoption of a resolution of necessity and the publication of a notice of intention to improve are conditions precedent to ordering or making the improvement, and that the statutes requiring same are to be somewhat strictly followed. *As these are essential to the exercise of power by the city council, they are jurisdictional, without which all subsequent proceedings are invalid.*" (Emphasis supplied.)

Referring now to an early case, in City of Dubuque v. Wooton, 28 Iowa 571, at page 574, is this pointed statement of principle: "The power of taxation conferred upon the city by the sections of its charter * * * is the highest power and subject to less restraint than any other exercised by a free government. The particular taxes authorized—special taxes upon particular property—from their nature may be, if illegally levied, sources of the greatest oppression to the citizen. We know of no reason why, in levying and collecting them, a less degree of strictness, in following the law authorizing them, shall be exacted than in other cases of taxation." See also Charles S. Rhyne on Municipal Law, section 29–6, page 723; 2 Antieau, Municipal Corporation Law, section 14.07; 84 C.J.S. Taxation § 8, page 56; and 51 Am.Jur., Taxation, section 652, page 618.

■ We adhere to the view that statutes permitting special assessment levies by a city or town to defray part or all costs of a municipal improvement must be strictly construed.

VI. Looking now to relevant statutes, section 390A.7 states: "When the counsel shall deem it necessary *to acquire sites by* gift, *purchase* or condemnation *and improve* and maintain *the same as public parking facilities* under the provisions of this chapter and has established a benefited district for the purpose of assessing all or part of the cost thereof, it shall, in a proposed resolution declare it a necessity, describing the location of the proposed site or sites, the type of facility or construction to be placed thereon, the percentage of the cost of acquisition and improvement to be assessed against private property in such benefited district, and that the plat and schedule are on file in the office of the city or town clerk." (Emphasis supplied.)

This is followed by sections 390A.11 and 390A.13, dealing with time of hearing on a proposed resolution of necessity, and notice to be given.

Then comes section 390A.14 which significantly provides: *"After* the passage of the resolution of necessity, the council may by other resolutions order the acquisition of the site or sites by condemnation or otherwise and the improvement thereof by construction of the parking facility." (Emphasis supplied.)

█ The foregoing quoted acts clearly reveal to us a legislative intent that a city or town council can acquire jurisdiction to defray, by special assessment, only that part of the cost attendant upon acquisition or construction of a parking facility which is created or incurred subsequent to passage of the requisite resolution of necessity.

At this point a brief review of pertinent facts is essential.

Before chapter 390A became law, July 4, 1965, defendant City had entered into the Memorandum of Agreement with the railway company for the purchase of a tract of land in defendant's central business district, for use in the development of an off-street parking facility. By September 22, 1965, both conditions precedent in the agreement had been satisfied and it was enforceable. In other words, by virtue of the doctrine of equitable conversion defendant city became seized of the real estate described in the agreement, and subsequent delivery of deed related back to the time the agreement was executed.

But not until February 21, 1967, did the city council hold a hearing and adopt the controverted resolution of necessity, relative to *acquisition* and improvement. Actually this February 21st hearing was nothing more than a meaningless gesture of no legal significance as it related to the problem at hand because the land had already been acquired.

█ In brief, defendant city attempted to retroactively lump prior acquisition costs with future improvement expenses in a resolution of necessity, and then assess a fixed percentage of the total upon proper-

ties located within an established benefited area. This it could not legally do.

Plaintiff's timely and proper exceptions having been overruled by the city council, it sought relief in equity.

Trial court erred in holding the special assessment levied against property owned by plaintiff was valid and enforceable in any sum whatsoever.

Having thus determined invalidity of the special assessment as to this challenging plaintiff, there is no need to reach or resolve other propositions urged by it, or any proposition asserted by defendant on cross-appeal.

We accordingly reverse on plaintiff's appeal, and remand with directions that trial court set aside the decree heretofore entered, and enter a decree consistent with this opinion.

Reversed on plaintiff's appeal, and remanded with instructions.

All Justices concur, except UHLENHOPP, J., who takes no part.