**In the Matter of the ESTATE OF Ferne R. CLARK, Deceased.**

**George Clark III, Executor–Appellee,**

**And Concerning Suzanne Clark, Beneficiary–Appellant,**

**John F. Elliott and Doris M. Elliott, Intervenors–Appellees.**

**No. 88–904.**

Court of Appeals of Iowa.

Aug. 23, 1989.

Paul D. Lunde, Ames, for beneficiary-appellant.

James A. Brewer of Newbrough, Johnston, Brewer, Maddux & Nadler, Ames, for executor-appellee.

John L. McKinney, Ames, for intervenors-appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Appellant Suzanne Clark appeals a district court order conveying title of decedent's real estate to John and Doris Elliott, intervenors in this case.

In 1979, Suzanne Clark moved into the house of her mother, Ferne Clark, the decedent. In 1981, Ferne executed her will giving her daughter, Suzanne, a life estate in her home. In November 1986, Ferne granted her son, George Clark III, a general power of attorney. Ferne's health began to deteriorate and additional money was needed to finance her health care. Eventually George listed his mother's house for sale in order to receive Title XIX assistance. On January 29, 1988, George entered into a sale agreement with the Elliotts for the house. The agreement provided that the sale was conditioned on the sale of the Elliotts' home, "or this offer shall become null and void." On February 3, 1988, the Elliotts were informed by the board of directors of McFarland Clinic that it would buy their home. On February 20, 1988, Ferne executed a power of attorney, a deed granting Suzanne a life estate, and a codicil to her will in favor of Suzanne. In April 1988, the Elliotts conveyed their house to the clinic by warranty deed. Later in April, Fern died and George was appointed executor of her estate. Suzanne then filed this petition, pursuant to Iowa Code section 633.391, seeking a determination of her rights in decedent's real estate.

The district court ordered that the estate convey title to the real estate to the Elliotts free from any claims of Suzanne. The court also found that Suzanne was entitled to file a claim for reimbursement in accordance with Iowa Code chapter 560. In the event of an appeal, Suzanne was ordered to post an appeal bond. Suzanne then filed this appeal.

■ Appellant claims that the trial court erred on several issues. An action pursuant to Iowa Code section 633.391 seeks "to determine questions of conflicting and controverted title, or to remove clouds from any title or interest of property involved...." Iowa Code § 633.391 (1987). This is an equitable action. Our review is *de novo.* Iowa R.App.P. 4. In equity cases, especially when considering the credibility of witnesses, we give weight to the fact findings of the trial court, but we are not bound by them. Iowa R.App.P. 14(f)(7).

There are several dates important to the consideration of these issues. First, on March 31, 1981, Ferne wrote a will providing Suzanne a life estate in the home. Second, on February 10, 1988, John Elliott informed George's realtor that John and Doris had sold their home. Third, on February 20, 1988, Ferne executed a deed granting Suzanne a life estate.

■ Appellant first contends that she had an equitable life estate in the home as of March 31, 1981. Suzanne contends the evidence shows her mother agreed that she would have life occupancy of the home and that such agreement was evidenced by the provision for such occupancy contained in her will, executed on March 31, 1981. Thus, she contends she possessed an equitable interest in the property before the contract to purchase the property was executed by the Elliotts. The record does not support the existence of a contract for Suzanne's lifetime occupancy of the home as of March 31, 1981. Ferne's will created no present interest at the time of its execution. At best, it created an expectancy in Suzanne, and may have served as evidence of an intent, at that time, that should the home exist as an asset at the time of Ferne's death, Suzanne would have life occupancy of it as long as she desired to occupy it.

> [T]he essential character of a testamentary instrument is that it operates only upon and by reason of the maker's death. Until then it is ambulatory. By its execution the maker parts with no rights and divests himself of no part of his is estate and no rights accrue to, or vest in, any other person.

*Duhme v. Duhme,* 260 N.W.2d 415, 420 (Iowa 1977), quoting from *In re Estate of Lundgren,* 250 Iowa 1233, 1236–37, 98 N.W.2d 839, 841–42 (1959).

■ It is true that Ferne expressed a desire that Suzanne remain in the house after Ferne's death. She did, in fact, convey to Suzanne, a life estate, by deed, on February 20, 1988. There is a lack of testimony or other evidence that the ex-

pressions of Ferne's intent bestowed upon Suzanne a right to occupy the house for her lifetime or until she no longer desired to do so. If Ferne possessed the right to convey her property after the existence of the contract between George, her attorney in fact, and the Elliotts, she did convey a present right to Suzanne, for the first time. Because we hold that she did not have that right at the time of the conveyance of the life estate, we hold that it was ineffective to convey any right to Suzanne.

■ Were there no intervening rights, the provisions of the 1981 will would be effective to create a life estate in Suzanne at the time of Ferne's death. Even then, the property could be sold with her consent. Accordingly, even if we found that Ferne's 1981 will and her expressions of intent, coupled with the consideration furnished by Suzanne, created a right to a life estate at Ferne's death, the record shows that Suzanne consented to the sale of the house prior to the making of the contract with the Elliotts.. She agreed with her brother and other siblings that a sale was the only reasonable solution to the problem of providing for the care of Ferne. With this consent in hand, George contracted for the sale of the house. We hold that an equitable conversion occurred prior to February 15, 1988. No one attacks the enforceability of the contract. From the time of the equitable conversion, Ferne had no right to convey any interest in the property to anyone but the Elliotts, and to receive the proceeds of the sale.

■ This brings us to the second issue raised by appellant. Suzanne claims that the condition contained in the contract between the Elliotts and George was never satisfied, and that no equitable conversion took place. When the contract was drawn up on January 24, 1988, a condition was inserted by the Elliotts that their home must be sold by February 15, 1988 or the contract will become null and void. As of January 24, 1988, the Elliotts had no interest in the home because the condition had not yet been satisfied. However, once the Elliotts made the oral agreement with the purchaser of their home and conveyed to

George that the house was sold, they in effect waived any strict compliance with the condition. The fact that George did not actually waive the condition because he assumed the house was sold makes no difference. The only party from whom a waiver was required was the Elliotts. "A party may waive a condition precedent to his own performance of a contractual duty, when such condition precedent exists for his sole benefit and protection, and compel performance by the other party who has no interest in the performance or nonperformance of the condition." *Rodgers v. Baughman*, 342 N.W.2d 801, 806 (Iowa 1983). The record is clear that it was the Elliotts, through their representative, that added the condition. The probable reason for this condition was to make sure they would be able to complete the transaction, and was not intended to benefit George. In *Mosebach v. Blythe*, 282 N.W.2d 755, 760 (Iowa 1979), the court held that a party to a contract who is entitled to the performance of a condition precedent, may waive it either expressly or by conduct indicating waiver. The act of calling George's representative and informing him that the house within the condition had been sold in effect waived the condition of actual sale.

■ There was a valid and enforceable contract as of February 15, 1988, which was five days before the deed granting a life estate in Suzanne was executed, therefore an equitable conversion occurred on that date. *H.L. Munn Lumber Company v. City of Ames*, 176 N.W.2d 813, 816 (Iowa 1970). When the title passes under the terms of the contract, it will relate back to the date of the contract, which under any set of circumstances, is before Suzanne acquired any interest in the home. *Id.* The Elliotts have a legal title to the home either through equitable conversion or through the relation back when title passes. Ferne had no title in the home to convey to her daughter on February 20, 1988.

Whether or not the district court erred in its application of the law of bona fide purchaser makes no difference in this case. Suzanne was not without notice of the contract between her brother, George, and the

Elliotts, and had no interest that arose prior to the interest of the Elliotts.

Chapter 560 of the Iowa Code does not contemplate a claim for real estate taxes. The allowance for improvements is specifically stated in Iowa Code section 560.1 and is the only remedy available.

 The constitutional claims of the appellant are without merit, but will be addressed briefly. The lack of notice and a hearing on the bond alleged by the appellant is not error. Iowa Rule of Appellate Procedure 7 requires an appeal bond be posted in order to stay proceedings under a judgment. If the appellant is aggrieved by the clerk's action in failing to approve a supersedeas bond, a hearing is provided for by Iowa Rule of Appellate Procedure 8. There is no evidence either in appellant's brief or in the record that shows a hearing was ever requested. The $20,000 bond was not an amount grossly excessive. Iowa Rule of Appellate Procedure 7 allows a bond necessary to hold appellee harmless from the appeal. An amount of $20,000 is not out of bounds when dealing with a contract for an amount in excess of $80,-000. The reduction of time for appellant to perfect her appeal is not prohibited by Iowa Rule of Appellate Procedure 5(a). The thirty-day limit is set as a maximum and not given as a matter of right to the appealing party.

AFFIRMED.