[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this court is McDonald's Corporation's ("plaintiff") declaratory judgment action which concerns a dispute over the interpretation of certain terms in the parties' real estate agreement. This court has jurisdiction pursuant to R.I.G.L. §9-30-2. After a trial without a jury, the court finds the facts to be as follows.
FACTS
Plaintiff is a Delaware corporation lawfully doing business in Rhode Island. McKinney Real Estate Co., Inc. ("defendant") is a Rhode Island corporation and, at all times relevant to this suit, the owner of the subject property, a parcel of land located at 1427 West Main Road, Middletown, Rhode Island. The parties entered into a purchase and sale agreement, dated July 22, 1987, plaintiff agreeing to purchase and defendant agreeing to sell the subject property. The testimony indicates plaintiff drafted nearly the entire contract.
Edgar F. McKinney, president of defendant corporation, executed the contract on July 22, 1987. The contract was thereafter delivered to the plaintiff. An authorized agent for plaintiff executed the agreement after amending paragraph 6A on July 29, 1987. Paragraph 6A concerns the obligation to obtain proper zoning approval as a condition precedent to the purchase and sale. Plaintiff changed one word, transferring at defendant's request the duty from defendant to plaintiff to obtain zoning approval. Defendants request was orally made subsequent to its execution of the contract on July 22, 1987 and prior to plaintiff's execution of the contract on July 29, 1987. Plaintiff accepted and initialed the amendment and forwarded the agreement to defendant. Defendant initialed the amendment on July 31, 1987.
The contract set a purchase price of $750,000 unless the closing occurred 180 days after "full execution of this agreement," in which case the purchase price would be $850,000. Paragraphs 6D and 6E require plaintiff, as conditions precedent, to obtain a survey of the land and certain soil tests. Pursuant to the agreement plaintiff was to reimburse defendant for the costs. Additionally, paragraph 14 requires plaintiff to pay defendant $3,000 per month for three months and $4,000 per month thereafter until closing.
Paragraph 7 required defendant to remove "all signs, encroachments and existing improvements" within ten (10) days after plaintiff notified defendant that all conditions precedent had been satisfied. Additionally, pursuant to paragraph 8, closing was to take place "within ten (10) days after all conditions and provisions of this contract have been satisfied."
On January 15, 1988, plaintiff notified defendant they were ready to close on January 27, 1988. Although plaintiff had not yet obtained the appropriate zoning approval, they informed defendant they would waive this condition precedent and proceed with the closing. Plaintiff requested defendant fulfill their duty to demolish and remove all existing improvements for the January 27, 1988 closing.
Defendant did not complete the demolition and removal of existing structures in time for the closing because of their inability to obtain the proper demolition permits. The closing did take place on March 2, 1988 after defendant fulfilled their duty. A dispute arose over whether plaintiff was required to pay the additional $100,000. Defendant also demanded $4,000 in rent for the month of February which plaintiff refused to pay. Finally, plaintiff demanded reimbursement for the costs spent in surveying the property in accordance with the agreement.
Plaintiff has, as of this date, paid $750,000 to defendant but has not paid the disputed $100,000 or the $4,000 February rent. Defendant has not paid for the survey costs. Following this dispute plaintiff brought this declaratory judgment action to resolve this matter.
DISCUSSION
Pursuant to paragraph 2 of the agreement, whether plaintiff is entitled to the $750,000 price is dependent upon whether plaintiff was ready, willing and able to close within 180 days of "full execution of this agreement." Defendant contends full execution occurred on July 29, 1987 when plaintiff executed the agreement. Under this analysis January 27, 1988, the date plaintiff originally set for closing, would be beyond the 180 day limit. Plaintiff, on the other hand, contends July 31, 1987, the date defendant initialed the amendment, should be considered the final execution date. Under this analysis, January 27, 1988 would fall within the 180 day limit.
Paragraph 13 states that plaintiff's submission of the agreement for defendant's examination did not constitute an offer to purchase. In this light defendant's execution of the agreement and subsequent delivery to plaintiff constituted an offer. Defendant conditioned this offer, as evidenced by the testimony of Cynthia M. Monahan, upon plaintiff's amending the contract to require plaintiff to obtain the zoning approval. The testimony of Ms. Monahan clearly establishes that in fact plaintiff agreed to such change. Both the contract and the amendment to paragraph 6A were in fact executed by plaintiff on July 29, 1987. It is thus clear that the plaintiff assented on July 29, 1987 to contract with the change in paragraph 6A. The court finds that the parties at that point in time (i.e. July 29, 1987) had accepted the terms of the contract as constituted and intended to be bound thereby. When plaintiff actually made the change to paragraph 6A and returned the contract to defendant, plaintiff indicated an unequivocal and manifest intent to be bound by the contract. Although the defendant did not initial the change in paragraph 6A until two days later, it is preposterous to suggest that defendant's request for the change did not constitute willingness to be bound by the change to the contract. There is no evidence from which the court could infer that plaintiff and defendant did not intend to be bound by the terms of the contract on July 29, 1987. This analysis is consistent with various authorities that have evolved from similar controversies. See Ardente v. Horan,117 R.I. 254, 366 A.2d 162 (1976); Smith v. Boyd, 553 A.2d 131
(R.I. 1981); 2 Williston on Contracts, § 643 at 467 (Lead 4th Ed. 1991); and Schartz v. Hardorf, 7 Wis.2d 228, 96 N.W.2d 366, 370 (1959).
Final execution, therefore, occurred when plaintiff agreed to the offer, including the amendment, and executed the contract on July 29, 1987. Defendant's initialing of the amendment on July 31, 1987 merely ratified the change. Since the contract was formed on July 29, 1987, plaintiff became obligated to pay the additional $100,000 if the closing occurred after January 25, 1988 (i.e. the 180th day following full execution of the contract). Plaintiff waited until January 15, 1988 to inform defendant that it would waive the zoning approval requirement and was prepared to proceed to closing. With that notification defendant had through January 25, 1988 to perform its obligations with respect to site work which would have contemplated a closing after January 25, 1988. In any event plaintiff itself set a closing date for January 27, 1988, two days beyond January 25, 1988. Accordingly, plaintiff is obligated to pay defendant the additional $100,000.
As noted earlier, paragraph 14 required plaintiff to pay $3,000 per month for the first three (3) months and $4,000 per month while plaintiff "is pursuing satisfaction of the conditions precedent as outlined in Article 6 of this agreement." On January 15, 1988 plaintiff notified defendant they were waiving the conditions precedent and ready to close on January 27, 1988. A party may waive a condition precedent if the provision is for the waiving party's benefit. Jones v. United States, 96 U.S. 24, 28 (1877); Koedding v. Slaughter, 634 F.2d 1095, 1097 (8th Cir. 1980); H.L. Munn Lumber v. City of Ames, 176 N.W.2d 813, 816 (Iowa 1970); Lanna v. Greene, 399 A.2d 837, 841 (Conn. 1978).
Plaintiff properly waived the conditions and gave defendant the ten (10) day notice to remove the existing structures pursuant to paragraph 7 of the agreement. Plaintiff was ready to close thereafter. The fact that the closing did not take place until March while defendant performed the necessary site work was not due to the fault of plaintiff. Defendant, therefore is not entitled to $4,000 for the month of February.
Paragraphs 6D and 6E require plaintiff to obtain a "certified survey" (6D) and certain soil tests (6E) before closing. The agreement obligates defendant to reimburse plaintiff for the costs of such survey and tests. Plaintiff obtained the survey and tests but defendant refuses to pay. Defendant argues that plaintiff should have accepted previous survey and tests obtained by defendant. The agreement provisions, however, which are clear and unambiguous do not require plaintiff to rely on defendant's tests or survey. Additionally, it should be noted that defendant's survey was not certified as contemplated by the contract. Defendant is therefore required to reimburse plaintiff for the costs of the survey and soil tests that it incurred.
Counsel shall enter judgment in accordance with the above decision, reflecting therein the proper sums to be disbursed from those sums previously paid into the registry of the court.