T.C. Summary Opinion 2012-82

UNITED STATES TAX COURT

DAVID MERRITT FUNK, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5539-11S.                    Filed August 22, 2012.

David Merritt Funk, pro se.

<u>Karen O. Myrick</u> and <u>Susan K. Bollman</u>, for respondent.

SUMMARY OPINION

CHIECHI, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

_____

[1]Hereinafter, all section references are to the Internal Revenue Code in effect
for the year at issue.  All Rule references are to the Tax Court Rules of Practice and
Procedure.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for his taxable year 2008 of $7,500.

We must decide whether petitioner is entitled to the first-time homebuyer credit under section 36(a). We hold that he is not.

Background

Virtually all of the facts have been stipulated and are so found.

Petitioner resided in Iowa at the time he filed the petition.

On February 21, 2007, petitioner and Amber J. Reeves (Ms. Reeves), as buyers, and Matthew P. Johnson and Lynn M. Johnson (Johnsons), as sellers, executed a document titled "Real Estate Contract" (contract). On February 27, 2007, the contract was recorded with the recorder for Polk County, Iowa.

Pursuant to the contract, the Johnsons agreed to sell to petitioner and Ms. Reeves, and petitioner and Ms. Reeves agreed to purchase from the Johnsons, for $156,000 the real property at 3613 E. 43rd Street, Des Moines, Iowa 50317 (real property in question). Petitioner and Ms. Reeves in effect obtained a loan from the Johnsons in order to finance payment of the purchase price of the real property in

question.  The terms of that loan were set forth in paragraph 1 of the contract as

follows:

    **1.**   **TOTAL PURCHASE PRICE.**  The Buyers agree to pay for said property the total of **$156,000.00**, due and payable as directed by Sellers, as follows:

      **a. DOWN PAYMENT** of **$2000.00, receipt of which is hereby acknowledged**.

      **b. BALANCE OF PURCHASE PRICE, $154,000.00**, as follows:

      **$294.53** due and payable on or before March 1, 2007, with interest thereon at the rate of **7.650%** per annum, and **$1092.65** due and payable on or before the 1st day of each and every month thereafter, with interest thereon at the rate of **7.650%** per annum, until the entire unpaid balance of the contract, including principal and accrued interest, is paid in full.  The entire balance shall be due and payable on February 21, 2012.

      **c. ESCROWS.**  In addition to the principal and interest payment, the Buyers shall pay 1/12th of the annual real estate taxes, 1/12th of the yearly insurance premium, to be paid to the Sellers with the monthly payments into an escrow fund established by the Sellers.  Sellers shall use these funds to pay real estate taxes and insurance, prior to their delinquency, as the same shall come due.  The parties shall review and make adjustments in the escrow account during the term of the contract.

      **d. TAXES AND INSURANCE.**  Taxes and Insurance shall be included in monthly payment as follows:  taxes $299.50 and insurance $45.00.  **TOTAL PAYMENT DUE $1,437.15, due**

> **and payable on or before March 1, 2007 and each and every month thereafter**.

> e.  **PREPAYMENT.**  This contract shall allow the Buyers to prepay all or any part of the principal without penalty.

> f.  **DUE ON SALE OR ASSIGNMENT.**  This contract shall become due and payable in full upon sale or assignment by the Buyers.

> g.  **ACCELERATION.**  In the event of default by the Buyers, the Sellers, at their sole option, may accelerate the balance of the contract and require that the entire unpaid balance of the contract, including principal and accrued interest, be immediately due and payable by the Buyers.  If the Sellers elect to accelerate the contract, the Sellers may not forfeit the contract, but must proceed with a foreclosure action, as set forth below.

Provided that petitioner and Ms. Reeves timely performed all of their obligations under the contract, the contract required that possession of the real property in question be delivered to them on February 21, 2007, the date on which the parties to the contract executed it.  In that event, "any adjustments of rent, insurance, taxes, interest, and all charges attributable to the Sellers' [Johnsons'] possession" were to be made as of the date of possession.

In addition to the provisions in paragraph 1.c. and d. of the contract relating to real estate taxes on the real property in question (quoted above), the contract provided as follows with respect to real estate taxes:

Sellers shall not pay real estate taxes prorated to the date of closing and any unpaid taxes thereon payable in prior years. Buyers shall pay any taxes not assumed by Sellers and all subsequent taxes before same become delinquent. Whoever may be responsible for the payment of said taxes, and the special assessments, if any, each year, shall furnish to the other parties evidence of payment of such items not later than July 15th of each year. **Any proration of taxes shall be based upon the taxes for the year currently payable, unless the parties state otherwise.**

The contract also provided in pertinent part as follows:

5.   **CONDITION OF PROPERTY.** Sellers are selling this property in "as-is" condition. Buyers acknowledge that they have inspected the property, have examined all official plat documents, including easements of record, and applicable restrictive covenants, and are familiar with all aspects and conditions of the property. Buyers accept the property in its current condition and acknowledge that the property satisfies their need, intent, and plans for use.

6.   **CARE OF PROPERTY.** Buyers shall take good care of this property, shall keep the buildings and other improvements now or hereafter placed on the said premises in good and reasonable repair, and shall not injure, destroy, or remove the same during the life of this contract. **Buyers shall not make any material alteration in said premises without the written consent of the Sellers**, which consent shall not be unreasonably withheld. Buyers shall not use or permit the premises to be used for any illegal purpose.

7.   **INSURANCE.** Except as may be otherwise included above, Buyers as and from said date of possession, shall constantly keep in force insurance, premiums for which shall be paid by Buyers through the escrow account referred to above, against loss by fire, tornado and other hazards, casualties and contingencies as Sellers may reasonably require on all building and improvements, now on

or hereafter placed on said premises and any personal property which may be the subject of this contract, in companies to be reasonably approved by Sellers in an amount not less than the full insurable value of such improvements and personal property or not less than the unpaid purchase price herein, whichever amount i[s] smaller, with such insurance payable to Sellers and Buyers as their interests may appear. **BUYERS SHALL PROMPTLY DEPOSIT SUCH POLICY WITH PROPER RIDERS WITH SELLERS** for the further security for the payment of the sums herein mentioned. In the event of any such casualty loss, the insurance proceeds may be used under the supervision of the Sellers to replace or repair the loss if the proceeds be adequate; if not, then some other reasonable application of such funds shall be made; but in any event such proceeds shall stand as security for the payment of the obligations herein.

8. **LIENS.** No mechanics' liens shall be imposed upon or foreclosed against the real estate described herein. The imposition of a mechanics' lien against the property shall be considered a default event.

9. **ADVANCEMENT BY SELLERS.** If Buyers fail to pay such taxes, special assessments, and insurance and effect necessary repairs, as above agreed, Sellers may, but need not, pay such taxes, special assessments, insurance, and make necessary repairs, and all sums so advanced shall be due and payable on demand or such sums as advanced may, at the election of Sellers, be added to the principal amount due hereunder and so secured.

\*        \*        \*        \*        \*        \*        \*

11. **TIME IS OF THE ESSENCE.** Time is of the essence in this contract. Failure to promptly assert rights of Sellers herein shall not, however, be a waiver of such rights or a waiver of any existing or subsequent default. **Sellers and Buyers agree that the**

**provisions of the balloon payment, above, shall be strictly enforced.**

12. **EXCEPTIONS TO WARRANTIES OF TITLE.** The warranties of title in any Deed made pursuant to this contract shall be without reservation or qualification EXCEPT: (a) Zoning ordinances; (b) Such restrictive covenants as may be shown of record; (c) Easements of record, if any; (d) As limited by prior paragraphs of this contract; (e) Sellers shall give Special Warranty as to the period after equitable title passes to the Buyers; (f) Spouse if not titleholder, need not join in any warranties of the Deed unless otherwise stipulated.

13. **DEED AND ABSTRACT.** If all said sums of money and interest are paid to Sellers during the life of this contract, and all other agreements for performance by Buyers have been complied with, Sellers will execute and deliver to Buyers a **General Warranty Deed** conveying said premises in fee simple pursuant to and in conformity with this contract and Sellers will at this time deliver to Buyers an abstract showing merchantable title, in conformity with this contract. Such abstract shall begin with the government patent (unless pursuant to the Iowa State Bar standards there is a lesser requirement as to period of abstracting) to said premises and shall show title thereto in Sellers as of the date of this contract; or as of such earlier date if and as designated in the next sentence. This contract supersedes the previous written Offer to Buy. Sellers shall also pay the cost of any abstracting due to any act or change in the personal affairs of the Sellers resulting in a change of title by operation of law or otherwise.

14. **APPROVAL OF ABSTRACT.** Buyers have examined the abstract of title to this property and such abstract is accepted.

On February 21, 2007, petitioner started living in the house on the real property in question and treated it as his home. Thereafter, as required by the

contract, petitioner paid all the expenses associated with the real property in question, including real property taxes, premiums for insurance on that property, utility expenses, and any repair expenses.

Sometime in 2008, petitioner obtained a loan from a person other than the Johnsons in order to finance payment to the Johnsons of the remaining unpaid purchase price of the real property in question.[2] Thereafter, on June 24, 2008, the Johnsons executed a special warranty deed in which they conveyed that property to petitioner and Ms. Reeves. On June 30, 2008, that deed was recorded with the recorder for Polk County, Iowa. That special warranty deed stated that it was "given in full and complete satisfaction of one certain real estate contract dated February 21, 2007 and filed February 27, 2007 * * * in the office of the Polk County Recorder."

In Form 1040, U.S. Individual Income Tax Return (return), that petitioner filed around February 9, 2008, for his taxable year 2007 (2007 return), he showed his home address as the address for the real property in question. In his 2007 return, petitioner claimed deductions for real property taxes and home mortgage

---

[2]The record does not establish whether both petitioner and Ms. Reeves obtained a loan from a person other than the Johnsons to finance payment to the Johnsons of the remaining unpaid purchase price of the real property in question.

interest with respect to the real property in question of $3,614 and $10,127, respectively.

In the return that petitioner filed on February 7, 2009, for his taxable year 2008 (2008 return), the year at issue, he showed his home address as the address for the real property in question. In his 2008 return, petitioner claimed deductions for real property taxes and home mortgage interest with respect to the real property in question of $2,954 and $10,199, respectively.[3]

On March 2, 2009, petitioner filed Form 1040X, Amended U.S. Individual Income Tax Return, for his taxable year 2008 (2008 amended return). That amended return was identical to petitioner's 2008 return except that petitioner claimed in his 2008 amended return a first-time homebuyer credit of $7,500.

Respondent issued a notice of deficiency (notice) to petitioner for his taxable year 2008. In that notice, respondent disallowed the first-time homebuyer credit of $7,500 that petitioner claimed in his 2008 amended return.

## Discussion

Petitioner bears the burden of proving that respondent's determination in the notice is wrong. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

---

[3]In his 2008 return, petitioner also claimed "Qualified mortgage interest premiums" of $2,312.

An individual taxpayer who is a first-time homebuyer of a principal residence in the United States is entitled to a credit in an amount equal to 10 percent of the purchase price of the principal residence, sec. 36(a), but such amount is not to exceed $7,500, sec. 36(b)(1)(A).[4] The credit is applicable only if the taxpayer "purchased" the principal residence on or after April 9, 2008, and before July 1, 2009. Sec. 36(h). The term "first-time homebuyer" is defined in section 36(c)(1) to mean "any individual if such individual * * * had no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which this section [36] applies." As pertinent here, the term "purchase" is defined in section 36(c)(3) to mean "any acquisition".

The parties agree that petitioner[5] "purchased" the real property in question before July 1, 2009, as required by section 36(h). The only dispute here is whether petitioner "purchased" that property after April 9, 2008, as required by that section.

---

[4]In effect, the first-time homebuyer credit is a non-interest-bearing loan from the Government that must be repaid over a 15-year period. See sec. 36(f).

[5]Although under the contract Ms. Reeves and petitioner were the buyers of the real property in question, for convenience we generally shall refer hereinafter only to petitioner who claimed in his 2008 amended return the entire amount of the credit allowed by sec. 36.

It is petitioner's position that for purposes of section 36 he "purchased" the real property in question on June 24, 2008. In support of that position, petitioner argues that June 24, 2008, is the date on which he "took ownership" of that property because that is the date on which the Johnsons executed a special warranty deed in which they conveyed to him and Ms. Reeves the real property in question.

Respondent counters that for purposes of section 36 petitioner "purchased" the real property in question in 2007, and thus not after April 9, 2008,[6] when (1) under Iowa law the contract conveyed equitable title to the real property in question to him and Ms. Reeves and (2) he lived in the house on that property, treated it as his home, and enjoyed the benefits and bore the burdens of the ownership of the real property in question.[7]

---

[6]The date on which the Johnsons, as sellers, agreed to sell, and petitioner and Ms. Reeves, as buyers, agreed to purchase, the real property in question was February 21, 2007. That was also the date on which petitioner started living in the house on that property and treated it as his home.

[7]Respondent advances an alternative argument in support of respondent's position that petitioner is not entitled to the credit under sec. 36(a). We need not address that alternative argument. That is because, as discussed below, we agree with respondent's argument that for purposes of sec. 36 petitioner "purchased" the real property in question in 2007.

In resolving the dispute between the parties, we are guided by the principles summarized in Keith v. Commissioner, 115 T.C. 605, 611-612 (2000), where we stated:

Case law * * * sets forth the standard for determining when a sale is complete for tax purposes. With respect to real property, a sale and transfer of ownership is complete upon the earlier of the passage of legal title or the practical assumption of the benefits and burdens of ownership. See Major Realty Corp. & Subs. v. Commissioner, 749 F.2d 1483, 1486 (11th Cir. 1985), affg. in part and revg. in part T.C. Memo. 1981-361; Dettmers v. Commissioner, 430 F.2d 1019, 1023 (6th Cir. 1970), affg. Estate of Johnston v. Commissioner, 51 T.C. 290 (1968); Baird v. Commissioner, 68 T.C. 115, 124 (1977). This test reaffirms the longstanding principle, evidenced by the following early statement, that transfer of legal title is not a prerequisite for a completed sale: "A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership." Commissioner v. Union Pac. R.R. Co., 86 F.2d 637, 639 (2d Cir. 1936), affg. 32 B.T.A. 383 (1935).

In determining whether passage either of title or of benefits and burdens has occurred, we look to State law. It is State law that creates, and governs the nature of, interests in property, with Federal law then controlling the manner in which such interests are taxed. See United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985). Here, execution of the contracts for deed was not accompanied by a transfer of legal title, so we must decide whether these instruments were sufficient under State law to confer upon the purchaser the benefits and burdens of ownership. This inquiry is a practical one to be resolved by examining all of the surrounding facts and circumstances. * * *

Among the factors which this and other courts have cited as indicative of the benefits and burdens of ownership are: A right to possession; an obligation to pay taxes, assessments, and charges against the property; a responsibility for insuring the property; a duty to maintain the property; a right to improve the property without the seller's consent; a bearing of the risk of loss; and a right to obtain legal title at any time by paying the balance of the full purchase price. See Goldberg v. Commissioner, T.C. Memo. 1997-74; see also Major Realty Corp. v. Commissioner, supra at 1487; Grodt & McKay Realty, Inc. v. Commissioner, 77 T.C. 1221, 1237-1238 (1981); Musgrave v. Commissioner, T.C. Memo. 2000-285; Berger v. Commissioner, T.C. Memo. 1996-76; Spyglass Partners v. Commissioner, T.C. Memo. 1995-452. When a buyer, by virtue of such incidents, would be considered to have obtained equitable ownership under State law, a sale will generally be deemed completed for Federal tax purposes.
* * *

In Woods v. Commissioner, 137 T.C. 159 (2011), we applied principles consistent with the principles summarized in Keith in determining when for purposes of section 36 an individual taxpayer "purchased" certain real property. In Woods, after examining applicable State law in order to determine the property rights of the taxpayer under a certain agreement for deed to purchase a house, we held, inter alia, that for purposes of section 36 the taxpayer there involved "purchased" the house with respect to which he claimed the first-time homebuyer credit in the year in which he entered into that agreement. Id. at 163.

As required by Woods and Keith, we shall examine the law of the State of Iowa (Iowa law) to determine when petitioner acquired ownership of the real

property in question. Under Iowa law, a contract for the sale and the purchase of real property, like the contract in question here, "works an equitable conversion. The contract vendee becomes the equitable owner; the contract vendor holds title as trustee for his purchaser." Fellmer v. Gruber, 261 N.W.2d 173, 174 (Iowa 1978) (citing H.L. Munn Lumber Co. v. City of Ames, 176 N.W.2d 813, 816-817 (Iowa 1970)). Unless the parties to the contract agree otherwise, the purchaser, as the "holder of the ownership interest", id. at 174, bears any loss to real property to which a contract for the sale and the purchase of that property pertains that occurs after the effective date of the contract, see id.

We hold that under Iowa law petitioner (and Ms. Reeves) became the equitable owners of the real property in question as of February 21, 2007, the effective date of the contract in question. That contract was a financing arrangement between the Johnsons, as sellers, and petitioner and Ms. Reeves, as buyers, of the real property in question under which the Johnsons made a loan to petitioner and Ms. Reeves in order to finance their purchase of that property. Consistent with Iowa law, which treated petitioner (and Ms. Reeves) as the equitable owners of the real property in question as of February 21, 2007 (the effective date of the contract), on that date and under that contract petitioner started living in the house on that property and treated it as his home. Thereafter, as

required by the contract, petitioner paid all the expenses associated with the real property in question, including real property taxes, premiums for insurance on that property, utility expenses, and any repair expenses.  Moreover, in petitioner's 2007 return petitioner showed his home address as the address for the real property in question.  In that return, petitioner claimed deductions for real property taxes and home mortgage interest with respect to the real property in question of $3,614 and $10,127, respectively.

On the record before us, we find that for purposes of section 36 petitioner "purchased" the real property in question on February 21, 2007, and thus not after April 9, 2008, as required by section 36(h).  On that record, we hold that petitioner is not entitled to the first-time homebuyer credit under section 36(a) for his taxable year 2008.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.