# IN THE COURT OF APPEALS OF IOWA

No. 17-1487
Filed August 15, 2018

**J.R., a minor by her next friend, TaNEALE TOWNER,**
   Plaintiff-Appellant,

**vs.**

**MICHAEL G. RUSH and ANN M. RUSH,**
   Defendants-Appellees.
_____

Appeal from the Iowa District Court for Plymouth County, Robert J. Dull, District Associate Judge.

A plaintiff appeals from the order granting dismissal of her petition in favor of defendants and denying her motion for summary judgment on her conversion claim. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Glenn A. Metcalf of Metcalf & Beardshear, Moville, for appellant.

Elizabeth A. Row of Elizabeth A. Row, PC, Sioux City, for appellees.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

J.R. appeals from the order granting dismissal of her petition in favor of Michael and Ann Rush and denying her motion for summary judgment on her conversion claim.

**I. Backgrounds Facts and Proceedings.**

This contentious controversy over $2412.37 contains a lot of lawyer talk but precious little evidence. We have sussed out the following facts from the scant record before us: J.R. was born in 2001. TaNeale Towner is J.R.'s mother. From 2001 until 2015, Michael Rush believed he was J.R.'s biological father.

In September 2010, a multiple-party savings account was opened at the Bank of Dixon County. The account was opened with J.R.'s tax identification number and birth date. The account was in the names of J.R., Michael Rush, and Ann Rush (Michael's wife). The account required two signatures for withdrawals. Only two signatures appear on the signature card—Michael's and Ann's.[1] The opening deposit was in the amount of $1000. Another $1400 was added to the account by five deposits made in each of the following years ($300 in 2011, $250 in 2012, $300 in 2013, $250 in 2014, and $250 in 2015).

The evidence establishes that between May 2010 and August 2015, Michael's mother, Karen, sent J.R. four checks totaling $1300.[2] "School/College," "(School)," or "Good Grades/College Fund" is written in the memorandum line of

---

[1] This is understandable since J.R. would have been nine years old at the time.

[2] Those checks were $500 in May 2010, $300 in July 2011, $250 in June 2014, and $250 in August 2015.

three of the checks.[3]  The memo line was left blank on one.  The first check, dated May 2010, was made payable to "J.R./Michael or Ann Rush"—the rest were made payable to J.R.  The source of the other funds deposited into the account is not established by evidence in our record, but the parties assert all of the funds deposited into the savings account were gifts from Karen to J.R.

After learning he was not the father of J.R., Michael disestablished paternity in July 2015.  On October 21, 2015, Michael and Ann closed the joint savings account and transferred the funds, which then totaled $2412.37, to a checking account along with money from their children, S.R. and F.R.  On October 30, 2015, Ann withdrew $5200 from the checking account and deposited it into a 529 plan[4] that names S.R. as the beneficiary.  J.R. is not named as a beneficiary.[5]  Ann is the account owner, and Michael is the successor owner.

In March 2017, J.R., by and through her mother, TaNeale Towner, filed a petition alleging Michael and Ann converted the joint savings account funds, depriving J.R. of her ownership use of the funds.  She sought compensatory damages, punitive damages, and attorney fees.  After Michael and Ann filed a motion to dismiss or for summary judgment and for sanctions, J.R. resisted and moved for summary judgment on the issue of conversion.  Following an unreported

---

[3] The quality of the photocopied checks in issue is so poor that, without some context, i.e., copies of other checks, the payee and memo lines are illegible.  In any event, the parties do not dispute these items.

[4] A 529 plan is a type of investment account with certain tax advantages and is used to save for the higher-education expenses of the beneficiary.  *See* 26 U.S.C. § 529 (2018) (allowing states to establish qualified tuition programs where person may contribute for designated beneficiaries).

[5] It is unclear whether the 529 plan funds may be used for J.R.'s benefit.  The law in the area is complex and the legal arguments by counsel regarding the issue are undeveloped at this point.

hearing, the district court denied J.R.'s motion for summary judgment, granted dismissal in favor of Michael and Ann, and denied their motion for sanctions. After post-hearing motions were denied, J.R. appealed.

## II. Scope and Standard of Review.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). In other words, the court may grant summary judgment when the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989).

We review an order granting summary judgment for correction of errors at law. *See Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016). To prevail on a motion for summary judgment, the moving party must show the material facts are undisputed and, applying the law to those facts, the moving party is entitled to judgment as a matter of law. *See id.*; *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015). Therefore, our review is limited to two questions: (1) whether there is a genuine dispute regarding the existence of a material fact and (2) whether the district court correctly applied the law to the undisputed facts. *See Homan v. Branstad*, 887 N.W.2d 153, 164 (Iowa 2016).

A fact is material if it may affect the lawsuit's outcome. *See id.* There is a genuine dispute as to the existence of a fact if reasonable minds can differ as to how the factual question should be resolved. *See id.* "Even if facts are undisputed,

summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Walker Shoe Store v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982).

We view the record in the light most favorable to the nonmoving party and "indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence" of a genuine issue of material fact. *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000). If the record shows that the "resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment." *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996).

With regard to motions to dismiss,

> We review district orders granting a motion to dismiss for correction of errors at law. In reviewing the order, we view the petition in the light most favorable to the plaintiff, and will uphold dismissal only if the plaintiff's claim could not be sustained under any state of facts provable under the petition.

*Ackerman v. State*, 913 N.W.2d 610, 614 (Iowa 2018) (cleaned up).[6]

**III. Discussion.**

J.R. alleges Michael and Ann converted the savings account funds. To succeed on her conversion claim, J.R. must prove Michael and Ann exercised wrongful dominion or control over her property in a manner that seriously interfered with her right to control the property. *See Condon Auto Sales & Serv., Inc. v. Crick*,

---

[6] "Cleaned up" is a new parenthetical used to indicate that internal quotation marks, alterations, and citations have been omitted from quotations for readability purposes. *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (Fall 2017).

604 N.W.2d 587, 593 (Iowa 1999). Michael and Ann counter that Karen's gifts were conditional, conditioned upon being used for J.R.'s college education. With a condition precedent to the gifts, they contend J.R. has no right of control over the funds and they therefore could not have exercised wrongful dominion or control over the property contrary to J.R.'s possessory right to the property.

The district court concluded,

> Based on the facts set out above the Court concludes that no gift was, in fact, ever made in this matter and hence no conversion could occur. At no time did J.R. ever have access to the funds in question as she was not on the signature card, and even if she had been, withdrawal required the consent of one of the defendants. The transfer or gift was therefore conditional. "If a condition as to vesting of title is attached to the delivery of the gift, the gift fails. Therefore, a valid gift is made when a non-conditional delivery is tendered; otherwise it is not a valid inter vivos gift." *Raim v. Stancel*, 339 N.W.2d 621, 623-24 (Iowa Ct. App. 1983). Also, "[t]he insertion of a condition in a contract does not render the same void but only delays the enforceability of the contract until the condition precedent has taken place." *H.L. Munn Lumber Co. v. City of Ames*, 176 N.W.2d 813 (Iowa 1970). And finally, "[i]f a donor keeps some control over a gift to assure some purpose for the gift, the gift is not irrevocable and fails." *Raim*, 339 N.W.2d at 623-24.
>
> Based on the foregoing, the Court concludes that Plaintiff fails to state a claim upon which relief can be granted as no completed gift ever occurred in this matter.

The record is razor thin. Michael and Ann contend Karen gave the checks to J.R. "only for future college expenses and J.R. was fully aware of this fact." They also claim, "J.R. was aware in 2015 that the funds were transferred to the 529 account, and that they would not be available to her until she went to college," and that "J.R. is aware of the purposes of the funds, as it was both noted on the checks and discussed by J.R., Michael, and Michael's mother on several occasions." With no affidavits or deposition testimony we are left only to speculate as to Karen's

intentions or J.R.'s awareness. The only relevant documents submitted are: (1) four pages of poorly photocopied checks drawn on Karen's account (with four checks highlighted totaling $1300); (2) the ownership information for the joint savings account; (3) a December 2010 savings account statement; (4) six savings account deposit slips totaling $2400 in deposits; (5) a savings account withdrawal slip in the amount of $2412.37 closing the account; (4) a December 2015 savings account statement showing the closing withdrawal; (5) a deposit slip showing three amounts deposited into a checking account with the names of J.R., S.R., and F.R. handwritten in the column indicating the source of the funds ($2412.37 from J.R.); and (6) the paperwork for S.R.'s 529 account showing an initial deposit of $5200.

Neither party has established entitlement to dismissal or summary judgment on the conversion claim. Reading the petition in the light most favorable to J.R., we cannot conclude her claim could not be sustained under any state of facts provable under the petition. Dismissal was not appropriate. On the other hand, the facts presented establish, at least minimally, the existence of a disputed material fact regarding the nature of Karen's gifts to J.R. Summary judgment was not appropriate.

Accordingly, we reverse the district court order granting defendants' motion to dismiss, affirm the denial of J.R.'s motion for summary judgment, and remand for further proceedings.

Although both parties request an award of appellate attorney fees, neither cites authority for such an award. We therefore decline to make an award of appellate attorney fees. *See Hockenberg Equip. Co. v. Hockenberg's Equip. &*

*Supply Co. of Des Moines*, 510 N.W.2d 153, 158 (Iowa 1993) ("A party generally has no claim for attorney fees as damages in the absence of a statutory or written contractual provision allowing such an award.").

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**